## KIMBALL & ROWE *vs.* DAVIS & BROWN.

Proof of the hand-writing of the subscribing witness to a deed is sufficient evidence of its execution, although the witnesses be dead ; and the party seeking to establish the deed is not bound, in addition to such testimony, to give evidence of the hand-writing of the grantor, or of other facts to show his identity.

Where a commission to take testimony is sued out by the plaintiff, in which the defendant joins and furnishes cross-interrogatories, and the commission with the depositions of the witnesses be returned, and it does not appear that the last general cross interrogatory has been put to and answered by the witnesses, and the defendant on that ground objects to the reading of the depositions in evidence, the objection in general is fatal.

The plaintiff, however, is at liberty in such case to show that the commission was executed and the depositions signed by the witnesses in the presence of the counsel of both parties, and that no objection was made at the time, by the counsel for the defendant that all the interrogatories were not answered ; and on such facts appearing, the depositions will be received, notwithstanding the objection.

It seems that though the interrogatory was not put, or the answer suppressed, that an objection on that ground could not be taken at the trial, if the counsel of the party was present at the execution of the commission and did not then object ; the remedy, if any, would be by motion to quash the return to the commission.

The declarations of witnesses, whose testimony has been taken under a commission, made subsequent to the taking of their testimony, contradicting or invalidating their testimony as contained in the depositions, is inadmissible in evidence, if objected to. The only way for a party to avail himself of such declarations is to sue out a second commission.

NEW-YORK,
May, 1838.

Kimball
v.
Davis.

Such evidence is always inadmissible until the witness whose testimony is thus sought to be impeached has been examined upon the point, and his attention particularly directed to the circumstances of the transaction, so as to furnish him an opportunity for explanation or exculpation.

THIS was an action of *ejectment*, tried at the Essex circuit in January, 1836, before the Hon. ESEK COWEN, then one of the circuit judges.

The plaintiffs produced in evidence letters patent to Francis Legge for 5000 acres of land, granted in 1769, and a *deed* from Francis Legge to Rowe, one of the plaintiffs, bearing date 3d January, 1770, conveying the whole tract, of which the premises in question are a part. Proof of the *hand-writing of the subscribing witnesses to the deed* from Legge to Rowe was the *only evidence* adduced of its execution. The subscribing witnesses were dead. The evidence was taken in Massachusetts, under a commission issued for that purpose. The counsel for the defendants objected to the depositions being read, on the ground that it did not appear that the last cross-interrogatory (*Do you know of any other matter, &c.*) had been put to or answered by the witnesses. The counsel for the plaintiffs offered to prove that the commission was executed in *the presence of counsel for both the parties*, that *all* the interrogatories were read to the witnesses, their depositions taken down in writing and read to them in the hearing of the counsel before they were signed, and that no suggestion was made at the time by the defendants' counsel that any interrogatory remained unanswered: this evidence was objected to by the defendants' counsel but received by the judge, who then overruled the objection to the reading of the depositions. When the plaintiffs rested, the counsel for the defendants moved for a *nonsuit* on the ground that the deed from Legge to Rowe was not sufficiently proved; insisting that proof of the hand-writing of subscribing witnesses to a deed, where the witnesses are dead, is not sufficient; and that to establish the deed as duly executed, evidence should also be given of the *hand-writing of the grantor*, or other testimony showing his *identity*. The judge refused to grant the nonsuit. The defendants then offered to prove *declarations* made by two

of the witnesses, whose testimony was taken under the commis-
sion *since the taking of the same, contradicting* their testimony
as contained in the depositions : this evidence was objected to
and rejected by the judge.   After receiving other testimony
adduced by the defendants, the judge submitted the case to the
jury, who found a verdict for the plaintiffs.   The defendants
move for a new trial.

*J. Holmes & S. Stevens*, for the defendants.

*O. Clark & M. T. Reynolds*, for the plaintiffs.

*By the Court*, NELSON, Ch. J.   It is contended that some
of the depositions taken under the commission executed in
the case were improperly admitted, for the reason that it
does not appear that the last *general cross-interrogatory*
proposed by the defendants was answered by the witnesses.
The statute, 2 R. S. 394, § 16, gives no directions in this
respect, but there are respectable authorities which con-
sider the objection fatal, 3 Wash. C. C. R. 108 ; 4 id. 324 ;
and the reason assigned is, that unless all the interrogato-
ries are substantially answered, it is impossible to say that
the witness has told the whole truth.   It is, perhaps, the
safest rule to require the return of the commission to show
affirmatively the answers to all the interrogatories ; though,
I apprehend, in most cases, the omission in respect to this
general interrogatory, means only that the witnesses had
nothing further to relate.   But assuming the omission *prima
facie* to be a fatal defect, the fact that the omission was
executed in the presence of the counsel of the parties, cured
it, because then the inference is but reasonable that all the
answers considered by the counsel material for the defend-
ant were put down.   If not, and improperly withheld, the
counsel should have made a motion to quash the return to
the commission for the irregularity, and not take his adver-
sary by surprise on the trial.   The point may be said to
stand somewhat on the familiar principle in regard to the
trial of causes, where, if a defendant does *not* appear and
defend, he is presumed to take all legal exceptions ; but if

NEW-YORK, he appear in person or by counsel, none are usually regarded
May, 1838. but those made at the time ; and especially none which might
Kimball  have been removed if taken.
v.
Davis.      The counsel for the defendants proposed to prove decla-
rations of some of the deponents in the commission, made
since the execution of it, *contradicting* material facts therein
affirmed by them, which were rejected by the judge. *The*
*Queen's case*, I think, is decisive upon this point. 2 Brod.
& Bing. 129. It was there determined by all the judges,
that when a witness in support of a prosecution has been
examined in chief, and had not been asked on cross-examina-
tion as to any declarations made or acts done by him to
procure persons corruptly to give evidence in support of
the prosecution, it is not competent for the party accused to
examine witnesses in his defence, to prove such declarations
or acts without first calling back such witness examined in
chief, to be examined or cross-examined as to the fact
whether he ever made such declarations or did such acts ;
and the rule is equally applicable where the counsel disco-
vered the evidence thus proposed after the cross-examination
of the witness, and where he had departed the court and could
not be brought back. Ch. Justice Abbott, who delivered
the opinion of all the judges, observed, that the practice at
nisi prius, and without any exception known to the judges,
was this : if it be intended to bring the credit of a witness
into question, by proof of any thing that he may have said
or declared touching the cause, the witness is first asked
upon his cross-examination, whether or not he has said or
declared that which is intended to be proved. The learned
chief justice argued strongly in favor of the practice, on the
ground that it affords the witness an opportunity of giving
such explanation or exculpation of his conduct, if any there
be, as the particular circumstances of the transaction may
happen to furnish, and thus the whole matter is brought
before the court at once ; that it tends to prevent surprise as
otherwise the evidence in contradiction might be produced
after the witness had left court and when the opportunity
for explanation had been lost, which would be unjust both to
witness and party. See also p. 301 of same volume, and

1 Starkie's Ev. 183, 4th Phila. ed. 1834. This rule of evidence has been since applied with even more strictness than as laid down in the *Queen's case ;* for in *Angus* v. *Smith,* 1 Mood. & Malk. 473, Tindall, Ch. J. observed, " that before you can contradict a witness by showing he has, at some other time, said something inconsistent with his present evidence, you must ask him *as to the time, place and person, involved in the supposed contradiction,*" and this with a view to bring distinctly to his recollection the circumstances, and thereby enable him to explain what he had formerly said. The reporters add, in a note, that although the rule in the *Queen's case* was not laid down thus strictly, the practice at the circuits has ever since been in conformity to the doctrine above stated.

I am aware it may be said, that in the case of depositions taken under a commission there is no opportunity to call the attention of the witness to the inconsistent declarations or acts, and that therefore it should be made an exception to the general rule ; but I do not perceive any reason for a distinction between this and the case where the discovery of the evidence occurred after the cross-examination was ended, and the witness had left court and could not be brought back. All the judges in the *Queen's case* refused to make this an exception. 1 Starkie's Ev. 184, Phila. ed. 1834. 2 Brod. & Bing. 212. There is an additional reason for the application of the rule in a case like this, as otherwise a strong temptation would exist to tamper with witnesses to pervert or manufacture conversations, after the execution of the commission and when explanation would be impossible. Neither is there any particular hardship in the application of it, because, if the proof is material, it is always in the power of the party to renew the commission and comply with the rule. The case of *The People* v. *Moore,* 15 Wendell, 419, was referred to on this point, as favoring the views of the defendants ; but it will be seen on examination, that there this particular objection was not raised to the evidence discrediting the witness ; and if so, it is to be considered as waived.

It is contended that some proof of *identity* of the patentee Legge and the *grantor of the same name*, to Rowe, should have been given. The law, I think, was otherwise established in the case of *Jackson* v. *King*, 5 Cowen, 237, and which was there supposed to have been previously settled in *Jackson* v. *Goes*, 13 Johns. R. 518, and by the uniform practice of the court. In *Jackson* v. *King*, the lessors of the plaintiff sought to recover a tract of land as the heirs of one William Apple. They produced an ancient patent from the government to *a person of that name*, and then traced their pedigree back to William Apple, by the production of the records of the Dutch Church in the city of New York, extending to a time a little anterior to the date of the patent. The judge at the circuit nonsuited the plaintiff assigning as a reason that William Apple, the ancestor, was not sufficiently 'identified with the patentee of the same name. The court granted a new trial on the ground that the identity of name was *prima facie* sufficient, and that it devolved on the defendant to rebut the inference by showing another of corresponding name, age, &c. or in some other way. It appears to me impossible to distinguish the two cases in principle, as their substantial features in respect to this point are alike, the suit being brought in the one case by the *grantee*, and in the other by the *heir*. The identity of the *ancestor* with the *patentee* was just as material as that of the *grantor* with him here, in order to vest the title in the plaintiff—and in both cases it is to be inferred, *prima facie*, from the identity of name. Indeed, it may fairly be argued that the inference is the strongest in this case, because, in addition to the identity of name, is the presumption that the subscribing witness would not have attested the execution by any other person than the one described in the deed : that happens to contain evidence of identity. Even an acknowledgment of a deed under the statute, 1 R. S. 758, § 9, does not usually prove the identity which was required to be shown in this case ; for there it is only material to certify that the *officer knew* or had *satisfactory evidence* that the person who appeared was the *grantor described in the deed.*

There need not be given in the deed such a description as would identify this person with a patentee of the same name, or any other person. It seems to me, if proof of the signature of the witness amounts to any thing, it must be carried, in the first instance, as far as an acknowledgment goes ; otherwise it affords no evidence of the execution at all ; because so much is essential to make out what the face of the deed purports, or any proof of the execution by the grantor. Lord Ellenborough goes this length in *Milward* v. *Temple*, 1 Camp. 375, and the same doctrine was held by Buller, J. in *Adams* v. *Kers*, 1 Bos. & Pul. 360, 1.

Whether proof of the identity of the grantor or obligor, in addition to the signature of the subscribing witness, is necessary or not, is a point very much afloat in England. The cases of *Parkins* v. *Hawkshaw*, 2 Stark. R. 223, *Nelson* v. *Whittall*, 1 Barn. & Ald. 19, *Middleton* v. *Sanford*, 4 Camp. 24, *Mancot* v. *Bates*, Bull. N. P. 171, and *Whitlock* v. *Musgrove*, 1 Cromp. & M. 511, are in favor ; and *Adams* v. *Kers*, 1 Bos. & Pul. 360, *Gough* v. *Cecil*, 1 Selw. N. P. 467, n., *Milward* v. *Temple*, 1 Camp. 375, *Page* v. *Mann*, 1 Mood. & Malk. 79, *Mitchell* v. *Johnson*, id. 176, *Kay* v. *Brookman*, 3 Carr. & Payne, 555, *Doe, ex dem. Wheddon*, v. *Paul*, id. 613, against the necessity of the evidence of identity. In the case of *Mitchell* v. *Johnson*, Lord Chief Justice Abbott held proof of the signature of the subscribing witness sufficient, even where the obligor had signed with his mark. In *Kay* v. *Brookman*, Campbell, for defendant, said the point was *vexata questio*, Mr. Justice Bayley holding one way and Lord Ch. J. Tenterden the other ; but Best, Ch. J. presiding, said that he had great respect for his brother Bayley, but he felt bound to act as his predecessors had done ; that the uniform practice had been only to prove the hand-writing of the attesting witness. Such, I think I may add, has been the uniform practice in this state since the case of *Mott* v. *Doughty*, 1 Johns. Cas. 230, and *Sluby* v. *Champlin*, 4 Johns. R. 461.

New trial denied.