[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 15 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 16 
I think the admissions of the witness Shelton, which the plaintiff offered in evidence, were relevant to the issue. He had sworn, in effect, that the services of Andrews were not rendered in the employment of the defendants' company, but in fulfillment of an agreement which the witness had made with him by their partnership articles, and the offer was to show that he had stated that such services constituted a valid demand against the company, which it ought to pay. This could not be true, unless Andrews was in the service of the company when he performed the duties for which payment was claimed. The admissions, therefore, if made, were not matters of opinion, but were, in substance, the stating of *Page 17 
material facts directly hostile to what he had sworn. The plaintiff was, therefore, entitled to give these admissions in evidence to affect his credit, if his attention had been sufficiently called to the matter when he was under examination before the commissioner. He was inquired of whether he had not made statements, either to Horace or to Charles S. Andrews, to the effect of those offered to be proved, and he said he had no recollection of having done so. The first offer of proof was of a statement made by Shelton to the plaintiff in this suit. The attention of Shelton had not been directed to that conversation in any manner. But the other offer was to show a statement made to Horace Andrews in the presence of the plaintiff and of Charles S. Andrews. No time or place were indicated by the question, and none had been pointed out to Shelton, when he was asked as to statements made by him. The question then is, whether it is sufficient to inquire of a witness whether he has not made specific statements, contradictory to the testimony he has given, to an individual named, without mentioning time, place or other circumstance, in order to lay the foundation for giving in evidence such contradictory statements. The reason for requiring that a witness, whose credit it is intended to attack by the proof of contradictory statements, should be first examined respecting them, is according to the unanimous opinion of the judges in The Queen's case, that he may be enabled to give such reason, explanation or exculpation as the circumstances of the transaction may happen to furnish. (2 Brod. Bing., 313.) It did not fall within the purpose of the judges to declare how specific the cross-examination for such a purpose ought to be, the question being whether he should be required to be examined as to the fact whether he had ever made such declarations. InAngus v. Smith (1 Mood. Malk., 473), the witness attempted to be contradicted, denied, on cross-examination, that he had ever said what was imputed to him, but no name of any person had been suggested to him as the party to whom he had made the supposed statement. It was then proposed to prove a statement made to a particular person; but the court held that *Page 18 
a sufficient foundation had not been laid. The Chief Justice said: "I understand the rule to be that, before you can contradict a witness by showing that he has, at some other time, said something inconsistent with the present evidence, you must ask him as to the time, place and person involved in the supposed contradiction." In a note by the Reporter, it is stated that the general practice, since The Queen's case, has been in conformity with the rule as above stated by Chief Justice TINDAL. That rule was referred to as the one which should govern in such cases in the late Supreme Court, in Davis v. Kimball (19Wend., 437). The general rule, that the attention of the witness to be impeached must be in some sufficient manner called to his alleged conflicting declarations, has been frequently stated and affirmed in this court, though it has not become necessary to state the extent to which the cross-examination must be carried. (Patchin v. The Astor Mut. Ins. Co., 3 Kern.,
268; Stacy v. Graham, 4 id., 492.) The rule, as laid down by Chief Justice TINDAL, is generally referred to as the true one by writers on the law of evidence. (Cow. Hill's Notes, 774; 1Greenl., § 462.) I am not aware that any case has been presented to the courts where the name of the person to whom the declaration supposed to have been made, and nothing more, has been stated in the cross-examination of the principal witness, though the dicta of judges and of writers, as we have seen, tends strongly to the conclusion that this alone would not be considered sufficient. I conceive, therefore, that we are at liberty to lay down the rule which ought to be observed in such cases, and I am of the opinion that the occasion of the supposed conversation ought to be pointed out with reasonable certainty on the cross-examination of the witness whose credit is to be attacked by the proof of contradictory statements. It cannot, of course, be necessary that the precise date should be indicated, as that must often be difficult to ascertain, and if ascertained, would not be likely, of itself, to recall the circumstance to the witness; but the place could easily be indicated and the occurrence identified by a statement of the purpose of the interview or other circumstances, *Page 19 
which would recall it to the mind of the witness, if the conversation inquired of actually took place. It is obvious that the cross-examination, in this instance, did not come within the reason of the rule as thus defined, and that the judge was justified in excluding the declaration offered.
No error of substance was committed in the manner in which the judge submitted the case to the jury. Andrews had, no doubt, performed certain services in the business of the defendants, but there was considerable evidence to show that it was under an arrangement with Shelton by the terms of which the compensation of Andrews was to be had in the advantages he was to realize from his connection with that person. There was, it is true, a formal appointment to the place of assistant treasurer, covering a portion of the period in respect to which compensation was claimed, and this was a fact very favorable to the plaintiff's position. It was, however, quite consistent with Shelton's testimony that the appointment might have been made to satisfy some purposes of form. The absence of any agreement for compensation, and the fact that none was claimed until some time after the service of Andrews had ceased, confirm, to some extent, the evidence of Shelton; and we think upon the whole that the question was one of fact, suitable to be submitted to the jury. In terms, the question submitted was, whether Andrews rendered these services gratuitously. This is not precisely the language in which it should have been stated. The system of the defence was, that Andrews was employed and compensated by Shelton, and that the company owed him nothing. But the jury could not have misunderstood the point on which the case turned. The services of Andrews, according to Shelton's testimony, were to be gratuitous as respected the defendants, and this was the only question material to be considered. The judgment should be affirmed.
GRAY, J., delivered an opinion to the same effect; all the judges concurring,
Judgment affirmed. *Page 20