JOHN W. GRETON, Appellant, *v.* GEORGE O. SMITH and JOHN
B. McPHERSON, Respondents.

A tenancy from year to year is ordinarily implied in favor of the owner, against
  one who enters under a parol demise for a term of years, void by the statute
  of frauds.

But when the entry is under an agreement by the owner to execute a valid
  lease in writing for the term, and he afterwards, in bad faith, refuses to exe-
  cute it, repudiates the relation of landlord and tenant, and within the year
  resumes dominion over the property, he is bound by his election, and has no
  remedy on an implied agreement for intermediate use and occupation.

THE action was for the recovery of rent.

It was alleged in the complaint that the defendants had
been tenants of the plaintiff for the year ending on the 1st
of May, 1854; that they paid the rent up to that time; that
by permission of the plaintiff they continued in possession as
his tenants until the 1st of May, 1855, and that after that
date he resumed possession of the premises; that four hun-
dred dollars, payable quarterly, was a reasonable sum for
such use and occupation, and that the defendants promised
to pay that sum to the plaintiff.

They denied in the answer that they were the tenants of
the plaintiff for the year ending on the 1st of May, 1855, but
alleged that in the spring of 1854, they made an agreement
with him, by which he was to rent the premises to them for
ten years from the 1st of May, 1854, at an annual rent of
$275, payable quarterly; that it was agreed that he should
subsequently prepare the lease, and that they should execute
it; that upon this understanding and agreement they con-
tinued in possession, and paid the first quarter's rent on the
1st of August, at the rate so agreed; that the plaintiff, on
some trivial pretext, delayed giving the lease until shortly
before the 1st of November, when he refused to give a lease
on the terms agreed; that he also refused to allow them to
continue their occupation; that he resumed possession of the
premises, and put up a bill advertising them to be let, and
that by these means he compelled them to leave the premises,

which they did on the last of October. They alleged their counterclaim for damages and denied all indebtedness to the plaintiff.

In the reply the plaintiff admits the agreement for the ten years' lease, as alleged; admits that he was afterwards to prepare the lease to be executed by the parties, and also admits that the defendants, on this understanding and agreement, continued in possession, and that they paid at the agreed rate the rent for the quarter ending on the 1st of August. He denies the other allegations in the answer, and alleges that the agreement was not in writing; that the rent to be reserved on the lease was not ascertained until after the 1st of May, and depended on facts then unknown; that in October, 1854, in conformity with the agreement, he tendered a lease, duly executed, to the defendants, who refused to accept it or to execute the counterpart.

The cause was tried in the New York Common Pleas, before Judge DALY and a jury, and resulted in a verdict for the defendants. There was some conflict of evidence, but there was proof tending to establish the following facts; and as the verdict was in favor of the defendants, we are to assume that the proof was satisfactory to them.

The premises were part of the fourth story of a store in Maiden Lane, which the plaintiff held under a renewed lease from Messrs. Grinnell & Son, for ten years from the first of May, 1854; the rent reserved by them for the whole of the fourth story being $400 a year. The plaintiff's shop was in the front, and that of the defendants in the rear. The defendants were engaged in the manufacture and sale of gold and silver thimbles. The plaintiff was also engaged in the sale of thimbles, though ostensibly in the gold pen business.

In the spring of 1854, the plaintiff called on the defendants, and wished them to take a lease for ten years from the first of May. The negotiation resulted in a mutual agreement that a lease of the premises should be executed at an annual rent of $275, and that the lease should be unconditional. The defendants remained until October, but the plaintiff did not execute the lease. He then prepared

the draft of an instrument which he was ready to execute, but which the defendants would not accept. It was cumbered with conditions, one of which gave him a right of reëntry, if the premises should be used for any business which should interfere or conflict with his own. The defendants remonstrated against a prohibition of their continuance in the business in which he and they were engaged, and claimed an unconditional lease in accordance with the agreement. He told them they must sign this lease or none; that they were not his tenants, and if they did not sign it, he would make New York too hot to hold them; that he had them in his power, and if they did not sign it, he would turn them into the street. He accordingly posted a notice that the premises were to let, and offered to lease them to different parties, from the first of November, declaring that the defendants were no tenants of his; that they were in possession, but he would show them that they would have to go out. The defendants accordingly left the premises on the 31st of October.

Upon this state of facts the judge charged the jury, that if the plaintiff suffered the defendants to go into possession of the premises under a verbal agreement that they should have a lease for ten years, and then refused to give them such a lease as he had agreed to give, they were justified in abandoning them at the time they did, and are not liable for any rent for the period during which they actually occupied the premises in question; and the plaintiff's counsel excepted.

The judge also instructed the jury, that if the plaintiff delayed offering the lease until just before the defendants left the premises, and they refused, and the delay was occasioned by his own act, then the defendants were entitled to abandon the premises, and are not liable for any rent for the time they occupied; and the plaintiff's counsel excepted.

Exceptions were also taken to rulings on the admission of evidence, and to the refusal of the court to charge the jury in accordance with the plaintiff's requests.

The jury having found for the defendants, and the judgment having been sustained at the General Term, the plaintiff appealed to this court.

*Matthews & Swan*, for the appellant.

*Gilbert Dean*, for the respondents.

PORTER, J.  It is manifest from the evidence that the design of the plaintiff was to practice a fraud upon the defendants. When the aid of the courts is invoked to give effect to a dishonest purpose, the onus is upon the party who seeks interference in his behalf, to show a clear title to the relief he demands.  The case disclosed by the record is plain and bald.  The plaintiff acquired the control of the premises in question, under a lease for a term of ten years, at a rent of $400 a year.  The front rooms were occupied by him, and those in the rear by the defendants.  Both were engaged in the same business, though he had another ostensible employment. He induced the defendants, who had been his tenants during the previous year, to continue their occupation of the rooms in the rear of his own, by agreeing to give them a written lease for ten years, free from all conditions except the reservation of an annual rent of $275.  He exacted and received the rent for the first quarter, which became due on the 1st of August, 1854.  Before the rent for the second quarter accrued, he refused to execute a lease in conformity with the agreement, but offered to sign an instrument prohibiting the defendants from continuing the business, for which they had agreed to lease the premises.

There was no concealment by the plaintiff of his fraudulent purpose.  He not only refused to fulfill his agreement, but boasted that he had the defendants in his power, and that he could turn them into the street if they did not accede to his terms.  He threatened to expel them from the rooms they occupied, and resumed control of the property by posting advertisements on the door, and negotiating with third parties for a lease of the premises from and after the 1st of November.  He denied that the defendants were his tenants, and repudiated any agreement, either express or implied, that they should attorn to him as their landlord.

It is true, that but for his disclaimer of the agreement, and his interference with the possession of the defendants,

he could have held them to respond for the use and occupation of the premises, under the rule, which, at the election of the landlord, gives effect to a parol lease, void by the statute of frauds, by implying a tenancy from year to year. But in this case, the plaintiff chose to repudiate the relation of landlord and tenant, and he is concluded by that election. (*Morris* v. *Rexford*, 18 N. Y., 552.)

The express contract cannot be enforced; for the appellant chose to ignore it, and to shield himself under the statute of frauds. He cannot recover upon the implied contract; for he deliberately elected to disclaim it, to repudiate his own obligations, and to deny the rights of the defendants. It is true that he did not resort to physical force to expel them from their possession; but he threatened such expulsion, assumed to rescind the contract which the law implied in his favor, and resumed the dominion and control of the property, before the rent for the second quarter accrued. Under such circumstances, the defendants were at liberty to abandon their occupation, without awaiting actual expulsion, and to treat the conduct of the plaintiff as equivalent to a rescission of the contract, and an eviction from the demised premises. (*Burns* v. *Phelps*, 1 Stark., 94; *Ogilvie* v. *Hull*, 5 Hill, 55; *Hall* v. *Burgess*, 5 Barn. & Cress., 332; *Lawrence* v. *French*, 25 Wend., 445; *Dyett* v. *Pendleton*, 8 Cow., 727; *Edgerton* v. *Page*, 20 N. Y., 281, 283, 284.)

The judge was right, therefore, in his instructions to the jury. He was also right in refusing to charge in accordance with the plaintiff's requests. Some of these were purely speculative. Some of them assumed that the defendants were liable without regard to the conclusions of the jury from the evidence. Some of them related to the effect of isolated portions of the proof, dissevered from all connection with other facts, which the testimony tended to establish, and which gave them peculiar significance and force. Others were, in effect, requests to withdraw questions of fact from the consideration of the jury, and to preclude them, in determining the issue, from weighing the whole body of the evidence. It is manifest that the plaintiff suffered no injustice from the charge,

and none from the refusal of the court to permit him to frame his own instructions to the jury. It would be difficult to conceive an attempt more hopeless, than that of a deliberate wrongdoer to obtain benefit, through the verdict of a jury, from an act of sheer injustice.

The appellant complains that he was not permitted on the trial, to disparage the defendants' witnesses by inquiries irrelevant to the issue. The propriety of allowing such inquiries rests in the discretion of the presiding judge. The record discloses nothing to justify an inference that this discretion was abused, and the question is therefore one of which we can take no cognizance on appeal. (*The Great Western Turnpike Co.* v. *Loomis*, 32 N. Y. [5 Tiff.], 127.)

The judgment should be affirmed, with costs.

All the judges concurred in the foregoing opinion, except BROWN, J., who read a dissenting opinion, in which Judge DAVIES concurred.

Judgment affirmed.