BENONI LEE, Executor, etc., of Caleb N. Potter, deceased, Respondent, v. DEMETRIUS M. CHADSEY and JAMES R. CRAIG, Appellants.

Where evidence is offered for the purpose of impeaching the testimony of a witness, his attention should first be called to such evidence, and an opportunity be given him to answer with his attention thus awakened.

It·is not competent, in order to impeach a witness, to prove that he had said that in such a case as that in which his testimony was given, he would swear falsely. ·

It is not error to charge that the evidence of an impeached witness need not necessarily be wholly disregarded. The jury may give to it the weight to which, under all the circumstances of the case, it seems to be properly entitled.

HUNT, J. · This action was brought in October, 1860, to recover the amount of a promissory note, dated January 11, 1859, made by the defendant Chadsey, and payable to the order of the defendant Craig, for $3,000, and payable six months after date at No. 49 Broad street, New York.

The complaint sets forth the note, alleges the non-payment thereof, and the due presentment and protest of the note for non-payment, and demands judgment for the amount thereof, and interest.

The defendants Chadsey and Craig appeared by separate attorneys, but put in the same defense in substance.

The principal defense set up in both answers is, that the note is usurious and void. That one Anthony Boyer loaned to the defendant Chadsey the sum of $1,000 on the 3d of March, 1859, at a usurious interest, and on the 7th of March, 1859, the further sum of $300 also upon usurious interest.

The defendant Craig also, in his fifth answer, alleges that the plaintiff is not and never· was a *bona fide* holder and owner of the said promissory note.

On the trial of the action it was proved that the defendant Chadsey received, upon the security of the said note, the sum of $1,000 on the 3d day of March, 1859, and that James H. Leeds advanced that money by his check upon the Artisans'

Bank. That on the 7th day of March, 1859, said Chadsey received the further sum of $300 upon said security, which money he received through the hands of Anthony Boyer, but which money was also advanced by said Leeds.

It further appeared that the note in suit was passed over into the hands of James H. Leeds, together with the stock note taken for the $1,000, and the memorandum check for $300 loaned; and that, said loans not being paid by Chadsey, Leeds, on or about the 20th of May, 1859, sold the said $3,000 note to the plaintff in this action for a valid consideration, to wit: $2,000 cash, and the surrender of two notes of $450 each held by plaintiff, on which Leeds was the indorser.

The principal issue tried and litigated on the trial was whether the note was usurious; whether Anthony Boyer lent the two items of $1,000 and $300, and whether he received usurious interest therefor, or whether James H. Leeds loaned the said items, without receiving any bonus for the loan. There was no evidence in the case tending to show that Leeds received any usurious interest for said loans, or had any knowledge thereof. Both Leeds and Boyer testify positively that the $1,000 was loaned by Leeds to Chadsey. The jury found a verdict for the whole amount of the note and interest against the defendant Leeds, who made no defense to the action, and for the said $1,000 and interest thereon against the defendants Chadsey and Craig. Several exceptions were taken by the defendants Chadsey and Craig, during the trial, and to the charge of the judge.

The defendants Chadsey and Craig moved for a new trial upon these exceptions at Special Term, which was denied, and judgment was thereupon entered. The same defendants thereupon appealed to the General Term of the Supreme Court, where the judgment was affirmed, and now the defendants appeal to this court.

The testimony upon the point of usury was so conflicting, that the finding of the jury must be deemed conclusive in relation to it. The chief subject of contest between the parties is therefore disposed of, and the defendants must submit to the result, unless some error of law occurred upon

the trial which will require another hearing to be had, and thus afford a new opportunity for asking the judgment of a jury upon the contested facts. It is difficult to see upon what principle the jury found for the plaintiff upon the $1,000 note, and for the defendants upon the $300 check. It was their province, however, to pass upon each point, and nothing is before us authorizing us to review the facts.

The first error claimed by the defendant, is in the exclusion by the court of the record of a judgment in the Marine Court, in a suit brought by Mr. Leeds upon the $300 check in question. No object was stated by the counsel at the trial, in offering this record in evidence, but it is now claimed that it would have shown that Leeds himself brought a suit on the $300 check, in August 1859, and that he was therefore in error in stating in his testimony that he had transferred the note during the month of May of that year. It will be observed that Leeds was not on trial; the case, as to him, went by default, and the record could only be offered in evidence to impeach or contradict him as a witness. It was not original evidence as against the other defendants, and, to make it competent to impeach Leeds, it should have been shown to him, and the inquiry made if he had not so sworn, or at least his attention should have been called to it, and an opportunity given to him to answer with his attention thus awakened.

The defendant, however, at a subsequent stage of the cases, had the full benefit of this evidence, and thus obviated the objection, if any existed. It is stated at a late period of the trial, that the counsel for the defendant read the complaint, sworn to August 10, 1859, which was the same complaint upon the $300 check in the record before referred to.

It is next objected that the court erred in rejecting the defendant's proposition to show that Boyer told the witness Butler, that, in a case of usury, he would swear false to avoid it. No sufficient foundation had been laid for this question. Boyer had simply been asked, did you ever tell John Butler you would swear false to avoid usury? omitting all specification of time or place. This was not enough to

justify a contradiction. (*Pendleton* v. *Empire Stone Dressing Co.*, 19 N. Y. 13.)

I think the subject was also a collateral and immaterial matter, in relation to which the answer of the witness was conclusive. (Cowen & Hill's Notes, 522; *Newcomb* v. *Griswold*, 24 N. Y. 299; *Carpenter* v. *Hand*, 30 id. 243.)

As an impeachment, it was not competent, independent of the offer to contradict the witness. General character alone is competent for the purpose, and particular acts or facts have always been excluded. It would not have been competent to have shown that he had in fact sworn falsely in an usury trial, much less that he had threatened to do so. (Auth. *supra*; and 2 Seld. 104; *Corning* v. *Corning*, 7 Wend. 57; 4 Denio, 502; 5 Carr & Payne, 468.)

At another stage of the case, the witness, Boyer, was asked, if he had not been indicted for procuring a series of notes, purporting to be renewals, and presenting them, and getting the money on them as *bona fide* paper. This question was objected to as irrelevant, and it was further objected that the record must be produced. The objection was sustained, and the defendant seems to have been satisfied with the decision, as he took no exception. He cannot, therefore, ask its review in this court. I think also that the objection was a good one, and that the record was higher evidence than any oral statement. (*Newcomb* v. *Griswold, supra.*) The judge also had a right to exclude it on his own motion, without putting the witness to his privilege, and his decision is not the subject of an appeal. (*Third G. W. Turnpike Co.* v. *Loomis*, 32 N. Y. 127.)

The defendant also alleges error in the charge of the judge respecting the testimony of the witness Boyer. Several witnesses were called, who impeached Boyer, by direct testimony that his character was bad, and that they would not believe him when testifying under oath. The judge informed the jury, that it was for them to say how far he was impeached, and whether so far as to render him unworthy of credit; that they were not to disregard his testimony, but not to regard it as they would that of an unimpeached wit-

ness, but to disregard it only so far as it comes in conflict with a credible witness. " To the extent that he is corroborated by the circumstances of the case, or by the other testimony on the case, it does not exclude him as a witness. The credit to be given to him is submitted to you as a question to be passed upon by you in the jury room." After stating the impeachment, the judge further proceeded : " It is for you to say whether, notwithstanding that, he is still entitled to credit by reason of the probability of his story, by reason of the combination of the circumstances of the case, or by reason of the corroboration on the part of the other witnesses. This is all submitted to you with the other facts in the case."

The substance of the charge was, that an impeached witness might tell the truth; that he did not stand before the jury as one whose character had not been attacked, but that if from his manner, the circumstances of the case, or the corroboration of other witnesses, the jury believed his statement, he was a competent witness and it was competent to the jury to act upon his testimony. They were not bound to do so. They would be entirely justified in disregarding it, but they were not compelled to disregard it. This was a correct exposition of the law. Especially should this view prevail at this time, when all the former distinctions respecting the competency of a witness are abolished, and every thing is reduced to the theory of credibility, in the discretion of the jury. The law holds, with a few exceptions, that any intelligent person may be sworn, and that the jury may determine the extent of the reliance to be placed upon his testimony. If the fate of a friend or relative is involved, or an entire loss of fortune rests upon the result of a suit, the law now makes a person so affected competent to testify, and leaves it for the jury to weigh the testimony, in connection with the circumstances under which it is given. Even an accomplice in the commission of a foul offense, for which a prisoner is on trial, may testify, and the jury are not prohibited from convicting on his unsupported testimony. (Cow. & Hill's Notes, supp. notes 57 to 71 ; _People v. Doyle,_ 21 N. Y. 578; _Dunn v. People, infra._) It would be a singular anom-

aly that the testimony of one whose character was simply not equal to the standard of morality required by the community of which he was a member, should be incapable of consideration by the jury; that however well satisfied the jury should be, from all the surroundings of the case, that his narration was in accordance with the truth, that they should be positively prohibited from giving it attention. Such is not the law. The case of *Dunlop* v. *Patterson* (5 Cow. 243) holding a different doctrine has been overruled in *Dunn* v. *The People* (28 N. Y. 523).

These are the only important points in which the appellants claim that they have sustained injury. The case was eminently one of fact. The jury held the defendants to be in the wrong, and, whether well founded or erroneous, their opinion upon a question of fact is conclusive.

Judgment affirmed.