## COMMISSION· OF APPEALS.

ROBERT CORNELL WHITE, respondent, agt. ANDREW McLEAN, appellant.

*Closing the cross-examination of a witness by the judge — exceptions to charge.*

A judge at the trial has power of his own motion to close the *cross-examination* of a witness. And it will be held a wise discretion of the exercise of that power, where the judge orders the witness to leave the stand, after a large latitude has been given counsel, not only on direct cross-examination, but on recross-examination, to fully examine the witness, and after a suggestion from the judge that the subject has been exhausted, and the counsel reiterates again the same question which had been asked and answered several times.

Where counsel choose to rely on a *general exception* to the charge of the judge to the jury respecting the impeachment of a witness, stated, perhaps, in unguarded language, but other portions of the charge upon that question are correct, the exception cannot be sustained.

It is the duty of the counsel to call the attention of the judge specifically to that part of the charge which he considers objectionable, at the time it is made, and if not then corrected, a special exception should be taken.

*Before* LOTT, EARL, GRAY, REYNOLDS *and* DWIGHT, *Commissioners.*

APPEAL from a judgment and order refusing a new trial of the general term of the supreme court of the first judicial district, affirming a judgment rendered at circuit in favor of the plaintiff. The action was brought to recover the possession of personal property, of which the plaintiff claimed to be the owner.

The defendant set up in his answer that he was the owner of the property in question by virtue of an alleged purchase of it from one Joseph B. Sheridan, who was in possession of

it at the time of the sale. He made payment for it partly by canceling. an antecedent claim for rent of the premises in which the property, consisting of furniture, was at. the time of the sale, and partly in cash.

The plaintiff's theory of the case was that the furniture had been selected by Sheridan for the plaintiff as owner, and that the latter paid for it and leased it to Sheridan, who, at the time of the sale, had no other title than that of lessee, and of course could convey none to the defendant.

The action was tried by a judge and jury. Much evidence was given by the respective parties at the trial to sustain the issues in the case.

·One of the principal questions arising on this appeal concerns the right of the judge on the trial to stop the cross-examination of one of the witnesses. The facts are stated in the opinion. The testimony of Joseph B. Sheridan, one of the defendant's witnesses, having been taken in France under a commission, was read at the trial. The plaintiff produced six respectable witnesses who swore that Sheridan's character was bad, and that they would not believe him under oath. This impeaching testimony was not contradicted by the defendant.

The judge, in charging the jury, made some remarks on the subject of his impeachment, to which a general exception was taken. These are referred to in the opinion.

A verdict was rendered for the plaintiff and judgment accordingly. A motion for a new trial upon the exceptions was denied. An appeal from the judgment and order having been taken to the general term, and there having been affirmed, the defendant appeals to this court.

*L. S. .Chatfield*, for appellant.

*D. McMahon*, for respondent.

DWIGHT, *C.*—The appellant in this case relies upon two errors alleged to have been committed at the trial. One of

White agt. McLean.

them concerns the right of a judge to stop the examination of a witness, while the other relates to the charge of the judge to the jury in respect to the impeachment of the testimony of another witness.

I. The principal question at the trial concerned the ownership of furniture which had been sold by one Sheridan to the defendant. The plaintiff maintained that the title was in himself, and that Sheridan's act was nugatory. To sustain this view the plaintiff was examined in his own behalf. He was subjected to a protracted cross-examination by the defendant, the report of which occupies nearly fifty folios. To this cross-examination there was no check, and wide latitude was taken in the questions asked. It was closed by the defendant, when the witness was again called by the plaintiff for direct examination. When that was closed there was an extended recross-examination. The question between the parties arises in this way : On the redirect-examination the plaintiff testified that he had bought the furniture in distinct parcels, and had paid for a number of them by separate checks. For two of the parcels he swore that he gave the money to Sheridan to make the necessary payments. One of the bills contained a small item for a pair of curtains. The court, on those cross-examinations, allowed ten questions on the subject of the curtains, running out into much detail.

The judge then said to the defendant's counsel : "You have exhausted the witness; you will never stop it, unless I stop it." The counsel, still persisting, asked the witness other questions concerning the curtains, when the judge told the witness to leave the stand. On the objection of counsel that they had not finished the examination the judge further said that he considered the cross-examination exhausted, and that he would close it. To this ruling the defendant excepted.

These facts present a question as to the power of a judge, of his own motion at the trial, to close a cross-examination. This question will first be considered on the supposition that this was an ordinary cross-examination, without reference to

the special fact that the present case is that of a recross-examination. The importance of according to parties, to an ample extent, the right of cross-examination will not be denied. It is often the only successful method of eliciting truth from a captious, unwilling, or even forgetful witness. The questions to be asked vary so much with the intelligence, spirit, temper and memory of the witness, that they cannot be reduced to precise forms. From the necessity of the case the whole subject rests largely with the discretion of the court. A wise judge will err on the side of indulgence rather than of strictness, and permit questions to be asked touching the veracity, bias and temper of the witness, in deference to the views of cross-examining counsel, even though, from his own point of view, the examination may be unreasonably protracted. He will reflect that he cannot, in general, know so much of the case as counsel who has given it careful attention, and who has sources of information as to the position which the witness holds to the cause that are not accessible to himself.

This indulgence, however, has its limits. Were it not so, trials might be protracted to an extent prejudicial to the rights of the other suitors, and to the interests of the public at large. It is even conceivable that a close and minute cross-examination may be carried on solely to annoy a perfectly veracious witness, or to try, and perhaps overcome, the patience of a judge. The court must have the power to control the whole matter in the exercise of a sound discretion. If that discretion be abused, correction of the abuse must be sought in the appellate court. In the case of *Hunter* agt. *Kehoe, Ridgway Lapp* (5 *Schwabs*, 380), Lord CLOWNELL observed, as a general remark, that cross-examination had gone to an unreasonable length ; and he had in general permitted gentlemen to go as far as they pleased, because, if there was an honest case on the other side, it would do them no good. This case is cited as law in 2 *Evans' Pothier*, 269 ; 2 *Starkie on Ev.*, 1739, *note k* (*Am. ed.*, 1836). This state-

ment is a strong recognition of the right of the court, in its discretion, to check a cross-examination. This proposition is generally asserted by the text-writers on "evidence" (1 *Greenleaf on Evidence, Redfield's ed.*, § 456 ; *A. Taylor on do.*, § 1291 ; *Phillips on Evidence, Cowen & Hills Notes ; Commonwealth* agt. *Sackett*, 22 *Pickering*, 394 ; *Lawrence* agt. *Barker*, 5 *Wendell*, 301 ; *Turnpike Co.* agt. *Loomis*, 32 *N. Y.*, 127 ; *Grotten* agt. *Smith*, 33 *N. Y.*, 250 ; *Ray* agt. *Missouri*, 17 *Wallace, U. S.*, 532). This rule could not, in general, be so far extended as to exclude a question which was material to the issue (*Commonwealth* agt. *Sackett, supra*) ; though, even in that case, if all the material questions has been asked, and there was a needless repetition and waste of time, the same principle must be applied, and the exercise of a discretion allowed, subject to review in the case of abuse.

In the present case there was no abuse of discretion. The cross-examination had been very full. The witness had once been permitted to leave the stand. On the recross-examination the questions had been numerous ; and to a particular question the witness had answered that he did not remember ; and to a second question of the same general import he had given the same answer. The question was of no importance, except as testing the memory of witness. The judge then intimated that he should close the examination, whereupon the counsel asked the same question to which he had already received an answer. It was at this stage that the judge interfered and directed the witness to leave the stand. The fair interpretation of his act is that he intended to close the examination on that particular point. Had the counsel for the defendant then proposed a material question, not included in the questions and answers already made, the matter might have assumed, on an appeal, another aspect. As the case is presented there was no plain abuse of discretion ; and without that the court will not interfere. Said PARKE, in *Middleton* agt. *Barned* (4 *Exch.*, 243) : "We never interfere in such a

White agt. McLean.

case unless it be perfectly clear that a learned judge has wrongly exercised his discretion " (*Turnpike Co.* agt. *Loomis*, 32 *N. Y.*, 127).

It makes no difference that the witness under examination was the opposite party to the action. He is but a witness, and the general rules applicable to adverse witnesses govern the case. Though a broader range of cross-examination than is usual is allowable, it is still subject to the discretion of the court (*Clarke* agt. *Saffery, Ryan & Moody*, 126; *Ray* agt. *Missouri*, 17 *Wallace, U. S.*, 532).

These views are strengthened by the fact that this was a case of recross-examination, which might properly have been confined to the matters elicited on the redirect-examination.

II. The defendant's next objection is that the judge erred in his charge concerning the credit to be given to Sheridan as a witness by reason of his impeachment. After stating that six respectable and intelligent witnesses had sworn that Sheridan's character was bad and that they would not believe him on his oath, he added : "Now, I ought to state to you in this connection a *rule of law*, and that is, that when you retire to consider this case, if you shall find that Mr. Sheridan is impeached, then you can give no consideration to his deposition, it is to go out of the case as that of a man not to be believed on his oath ; because every man who comes into a court of justice has the right to have his issues and his rights determined by credible evidence. I do not make these remarks as designing that you should draw any inference of my own upon the question whether he is impeached or not, for that belongs to you." He then called the attention of the jury to the fact that no witness had been produced indorsing Sheridan's character.

In another part of the charge the judge added, " I would say to you that if in any part of Mr. Sheridan's testimony you find him confirmed and supported by other evidence in the case, then you shall consider his evidence in its connection."

White agt. McLean.

The defendant's counsel excepted generally to that part of the charge relating to the impeachment of Sheridan's testimony.

The meaning of the charge, taken as a whole, plainly is that if the jury shall find, as a result of the testimony, that Sheridan's character is such that he is unworthy of belief, his testimony is to be disregarded. The word "impeach" is capable of two significations: one is the charge or accusation of want of veracity, the other is the establishment of the charge. The last sense is shown in the common phrases, "attempt to impeach" or a "failure to impeach," which imply that, though the charge has been made it has not reached a result. When the judge says to the jury, if you *find* that Sheridan is impeached, &c., he means if the jury reach the conclusion that his testimony is unworthy of belief, it is to be disposed of by them in the manner which he points out. The point of the charge open to plausible objection is that where he appears to affirm in substance that it is a rule of law that the testimony of a witness successfully impeached cannot be considered by the jury, "that it must go out of the case." If he had meant by this that the jury had no right to take it into account, his remarks would seem to be erroneous, for it is difficult to affirm that testimony legitimately before a jury, on a disputed question of fact, cannot be taken into consideration. In *Dunn* agt. *People* (29 *N. Y.*, 523), a witness had sworn differently upon the same point at a former trial. The court held that the witness must not be pronounced by the judge wholly incompetent, nor his testimony be stricken out and wholly excluded from consideration. On the other hand it was said that the testimony must remain in the case and be considered by the jury in connection with the other evidence in the cause under such prudential instructions as might be given by the court. The case of *Dunlop* agt. *Patterson* (5 *Cow.*, 243), so far as it holds a different doctrine, was overruled.

In *Lee* agt. *Chadsby* (2 *Keyes*, 543; *S. C.*, 3 *Keyes*, 225),

the court held that it was not error to charge the jury that the evidence of an impeached witness need not necessarily be wholly disregarded, but the jury may give it the weight to which, under all the circumstances of the case, it seems to be properly entitled.

It was not the intention of the judge in the present case to disregard the authorities, for, in another part of his charge he says : "If you find Sheridan confirmed and supported by other evidence in the case, then you shall consider his evidence in its connection." This could not be done if the testimony was to go out of the case " in the sense of being excluded from consideration. The judge appears to have had in his mind the rule in *Dunn* agt. *The People* (*supra*), though he did not express it with fullness and precision. He meant that the testimony was to be taken in connection with the other evidence in the cause. It is one of those unguarded expressions, in which counsel should have called the attention of the judge specifically to the phraseology used, and to have given him the opportunity to correct himself, or, if he persisted in an inaccurate statement, he should have specifically excepted to the objectionable words. As he did not choose to take this course, but preferred to rely on a general exception to the whole subject of impeachment as stated in the charge, and, as some portions of it are plainly correct, his objection cannot be entertained.

The judgment and order denying a new trial should be affirmed.

All concur.