## DARLING *v.* HOWE.

*(Supreme Court, General Term, First Department.* May 15, 1891.)

1. APPEAL—REVIEW—NONSUIT ON WHOLE CASE.
   In an action by a real-estate broker to recover commissions upon a sale, wherein plaintiff was nonsuited on the whole case, and an exception taken, it is not necessary, in order to present such exception for review, that he should ask to be allowed to go to the jury upon the question whether his services were rendered gratuitously or in expectation of compensation.

2. FACTORS AND BROKERS—COMMISSIONS—WHEN EARNED.
   Plaintiff sold certain real estate for defendant under authority from her son, understanding that she would pay him for his services. Defendant never expressly promised to pay defendant commissions, but she did not deny her liability therefor after the sale was made, the benefit of which she accepted. *Held*, that it was error to refuse plaintiff permission to go to the jury upon the question whether his services were gratuitous or rendered in expectation of compensation.

3. SAME—EVIDENCE.
   In such case it was error to exclude plaintiff's testimony that defendant's son had placed other of defendant's houses in plaintiff's hands to be sold in the same way as that in controversy.

Appeal from circuit court, New York county.

Action by William A. Darling, Jr., against Mary W. Howe, to recover commissions on a sale of real estate. From a judgment of nonsuit plaintiff appeals.

Argued before DANIELS and LAWRENCE, JJ.

I. Albert Englehart, for appellant. *Joseph S. Wood*, for respondent.

LAWRENCE, J. The plaintiff alleges that on or about June 30, 1890, he sold for the defendant certain premises, situated in Mt. Vernon, to one Catherine Smith, for the sum of $7,500; that the defendant promised and

agreed to pay said plaintiff for said services the sum of $187.50; that no part thereof has been paid; and that there is now due and owing to the plaintiff said sum, with interest from the 30th of June, 1890, for which amount judgment is demanded. The defendant, by her answer, admits the first paragraph in the complaint, which alleges that the plaintiff sold the premises in question for the defendant; but she denies the second and third allegations in respect to the amount agreed to be paid, and in respect to her indebtedness to the plaintiff. She then avers that she consented that the plaintiff should make the sale referred to in the said complaint, and that said sale was made upon the express condition that she should not be liable for any commission on such sale, or any charge for making the same, but that she should receive the full amount of $7,500 net, without any reduction or deduction whatever. The only witness examined on the part of the plaintiff was the plaintiff himself, who testifies as follows: "I reside at 133 South Third avenue, Mount Vernon. I am the plaintiff in this case. I know Mary W. Howe. I had something to do with the sale of the property of Mrs. Howe in South Third avenue, Mount Vernon. I think it was in the first part of May her son authorized me to sell the house,— allowed me to sell it. I did not have any conversation with Mrs. Howe in respect to the sale of the house. About the time when the house was being sold a contract was made, and I had a conversation with Mrs. Howe then. I called on Mrs. Howe in the evening. I went to see her son, I thought— I can't get around it otherwise unless I mention: At about the time the contract was signed, or about the time the contract was made between the parties, I had conversations with Mrs. Howe. She signed the contract, and said nothing about the commission the day the contract was signed. The night I went—the night before she signed the contract, or two days before,—it was Saturday evening,—she told me she didn't want to pay any commission; and she got a good price for the house. I went there to ask her for a refusal of the house for three days, so the transaction could date from the first of the month; so the gentleman, Mr. Smith, who was the tenant then of the house, would not—she would not lose her rent —that is, the transaction was to figure from the first of the month. She said she didn't think there would be any objection to it,—a refusal for the sale of the house for three days. She then knew that I had Mr. Smith as a purchaser. She said, 'I see you have sold our house.' I says, 'Yes; I want to ask you for a refusal for three days.' She says, 'You know you sold the house for a pretty good price, and you ought to get a commission out of the other party.' I says, 'The other party is not the one to look to for the commission.' I says, 'I was authorized to sell the house by your son.' She said she knew that; and that was all the conversation I had with her. The next Monday morning I went over and signed the contract. Mrs. Smith bought the house, and signed the contract in her house in the presence of her husband and a lawyer. I sold the house to Catherine Smith. The contract was signed by her, and the house has been conveyed to her,—to Mrs. Smith. I have not been paid any commission. My commission is $187.50. That has not been paid me. That is the legal commission. How I came to go to Mrs. Howe's son was, I was out in the yard, and saw him going past, and we had just bought— *Question.* Had he placed the house and other houses of Mrs. Howe in your hands for sale the same as he did this? (Objected to as immaterial. Sustained. Exception.) *Cross-Examination by Mr. Wood:* I stated on my direct examination that when I saw Mrs. Howe she said, 'I see that you have sold our house;' and I then stated that I wanted a refusal for three days. I wanted the refusal for the reason that the gentleman I sold it to was a tenant of hers, and I didn't want to beat her out of a month's rent. We wanted the transaction to go from the first of the month. She said, 'You know I don't want to lose my month's rent out of it.' I wanted a refusal of it, so as to date from the first of the month. She accepted,—her

son accepted the house when I sold it. I say I sold the house, and then I asked for a refusal of it for three days. I mean by a refusal that I asked for the privilege to make a contract within three days. I think I had sold it because she accepted me. When I saw her there she said, ' I see you have sold my house.' I stated also that Mrs. Howe said she did not want to pay any commission. She didn't say she wouldn't pay any commission. She said I ought to get the commission out of the other party; they got the house very cheap. I said they wouldn't pay any commission. She didn't say she would. I said she might compromise with me for $100. This was before the contract was signed. She said she didn't want to pay any commission. She didn't say she would not." At the conclusion of this testimony the plaintiff rested, and the defendant's counsel moved for a nonsuit, which motion was granted, and the plaintiff excepted.

It cannot be contended that the appellant cannot present the questions sought to be raised on this appeal on the ground that he did not ask to be allowed to go to the jury upon the question whether his services were rendered gratuitously or in anticipation of compensation therefor. Where the court at circuit nonsuits the plaintiff on the whole case, and an exception is taken to enable him to present the exception to the appellate court for review, it is not necessary that he should ask permission to go to the jury upon the whole case or upon any question therein. *Train* v. *Insurance Co.*, 62 N. Y. 598; *Clemence* v. *City of Auburn*, 66 N. Y. 334. It is also well settled that in case of nonsuit the rule requires that upon an appeal all contested facts shall be deemed established in favor of the plaintiff, and the most favorable inferences to be drawn from the evidence must be assumed in his favor. *Galvin* v. *Mayor, etc.*, 19 N. E. Rep. 675; *Rehberg* v. *Mayor*, 91 N. Y. 141. Bearing in mind these principles, we are of the opinion that upon the evidence presented by the plaintiff it was error to dismiss the complaint. A broker claiming a commission upon the sale of real estate must show an employment, and that the sale was made by means of his efforts or agency. *Sussdorff* v. *Schmidt*, 55 N. Y. 319; *Jarvis* v. *Schaefer*, 105 N. Y. 289, 11 N. E. Rep. 634. The evidence given by the plaintiff was intended to show that the sale of the property in question was effected by the plaintiff after he had been authorized by the defendant's son to sell the same. What the son's authority was in that respect does not appear from the evidence, but it does appear that when the plaintiff went to the defendant, before she signed the contract, "she then knew that I had Mr. Smith as a purchaser. She said ' I see you have sold our house,'" when the plaintiff said, "Yes; I want to ask you for a refusal for three days." She says, ' You know you sold the house for a pretty good price, and you ought to get a commission out of the other party.' I says, ' The other party is not the one to look to for the commission.' I says, ' I was authorized to sell the house by your son.' She said she knew that; and that was all the conversation that I had with her." This being on Saturday, the next Monday morning the contract was signed between the parties. It thus appears that the defendant knew that the plaintiff had been employed by her son to sell the house, and that she was satisfied to adopt and ratify the employment of the plaintiff by her son. It therefore was important to know precisely what transpired between the son and the plaintiff at the time he placed the property in question in plaintiff's hands for sale. The plaintiff sought to elicit that information by the question which his counsel put to him, as follows: "*Question.* Had he placed [that is the son] the house and other houses of Mrs. Smith in your hands for sale the same as he did this? (Objected to as immaterial. Sustained. Exception.)" We are of the opinion that the exclusion of that question was erroneous. It was designed to ascertain precisely what authority the son had from his mother in respect to the property in question, and was designed to elicit evidence which would show the understanding between the son as the agent (if proven to be the agent of his

mother) and the plaintiff. Furthermore, we think the evidence sufficient to establish *prima facie* that the defendant accepted the result of the plaintiff's services in the sale of the house without repudiating expressly the promise which the law would imply from such a transaction,—that she intended to compensate the plaintiff. The plaintiff, whose testimony is, for the purposes of this trial, to be taken as entirely true, says upon his cross-examination that "she didn't want to pay any commission. She didn't say she would not pay any commission. She said I ought to get the commission out of the other party; they got the house very cheap. I said they wouldn't pay any commission. She didn't say she would." After this had transpired between the parties, the contract was signed, and the defendant accepted the result of the plaintiff's labor or services. A jury, under such circumstances, it seems to us, would be perfectly justified in finding that, while the defendat wished to avoid paying the plaintiff for his services, after knowing that he claimed compensation, she availed herself of those services, and thereby assented to his demand. Whether the services were intended to be rendered gratuitously, or whether they were understood between the parties to be rendered for the usual commission allowed to brokers upon the purchase and sale of real estate, was a question which we think should have been submitted to the jury. See *Smith* v. *Railroad Co.*, 6 N. E. Rep. 397; *Pendleton* v. *Dressing Co.*, 19 N. Y. 13. In the latter case the plaintiff rendered services for a corporation under a formal appointment as treasurer, but with no arrangement for its compensating him, and there was evidence tending to show that he expected compensation only from the incidental advantages of his connection as partner with another officer of the company. It was held to be a proper question for the jury whether the services were intended to be gratuitous as it respected the company. See, also, *Green* v. *Roberts*, 47 Barb. 521. The case of *Hewett* v. *Bronson*, 5 Daly, 1, 6, 7, relied upon by the respondent's counsel, is not in point in this case, as the services therein rendered were such as the learned court found would be rendered by one person to another without contemplation of pecuniary reward, and were such as are performed by relatives, friends, acquaintances, or strangers, as duties, from motives of humanity. No such element exists in this case. There was no duty resting upon the plaintiff to sell the defendant's house, and the legal inference would be that in selling it he expected compensation, and that she intended, after adopting the fruits of his labor, after being informed that he expected compensation, to give him that compensation which the law would imply that he ought to receive. Whether this be so or not, the plaintiff certainly was entitled to have placed before the jury what transpired between the defendant's son and herself, for the purpose of showing what were the powers of the son; and, secondly, what was the agreement between the plaintiff and the son. For these reasons we are of the opinion that the judgment below should be reversed, and a new trial ordered, with costs and disbursements to the appellant to abide event.

DANIELS, J., (*concurring*.) It appears by the admission of the answer that the plaintiff sold the property for the defendant; and from that fact it may be inferred that it was understood that the defendant would pay him for his services in making the sale. She did not deny the existence of that understanding in the conversation with her, but claimed that the commissions should be paid by the purchaser; and, when informed that the purchaser was not the party who could be expected to pay, did not then deny her own liability. This evidence was sufficient to present the question as one of fact whether it was not the intention that she should pay the commissions, and that entitled the plaintiff to have the case submitted to the jury. It was not one, therefore, for the dismissal of the complaint, and the judgment should be reversed, and a new trial ordered, as directed by Mr. Justice LAWRENCE.