BENONI LEE, Executor, &c., of CALEB N. POTTER, deceased, Respondent,

*v.*

DEMETRIUS M. CHADSEY and JAMES R. CRAIG, Appellants.

Where the agent of the lender falsely represents himself to be the principal, the borrower believing him to be such, and takes a bonus in excess of legal interest for the loan, it is not usurious if the actual lender did not take usurious interest himself, or know of its being taken.

It is not competent to show a particular statement of a witness to impeach his credibility, without first pointing out to him, with reasonable certainty, the occasion of the conversation, to enable him to give such reason, explanation or exculpation as the circumstances of the transaction may happen to furnish. It is not sufficient to indicate nothing but the name of the person with whom the supposed conversation was had.

A witness whose credibility is impeached is still competent. The jury would be justified in disregarding his testimony, but are not bound to do so.

Especially should this view prevail at this time, when all the former rules in regard to the competency of a witness are abolished, and everything is reduced to the theory of credibility in the discretion of the jury.

### Appeal from General Term.

*E. F. Bullard,* for appellants.

*H. Sheldon,* for respondents.

HUNT, J.  This action was brought in October, 1860, to recover the amount of a promissory note, dated January 11, 1859, made by the defendant Chadsey, and payable to the order of the defendant Craig, for three thousand ($3,000) dollars, and payable six months after date, at No. 49 Broad street, New York.

The complaint sets forth the note, alleges the non-payment thereof, and the due presentment and protest of the note for non-payment, and demands judgment for the amount thereof, and interest.

The defendants, Chadsey and Craig, appeared by separate attorneys, but put in the same defense in substance.

The principal defense set up in both answers is, that the note is usurious and void. That one Anthony Boyd loaned to the defendant Chadsey the sum of one thousand ($1,000) dollars, on the 3d of March, 1859, at a usurious interest, and on the 7th of March, 1859, the further sum of three hundred ($300) dollars, also upon usurious interest.

The defendant Craig also, in his fifth answer, alleges that the plaintiff is not, and never was, a *bona fide* holder and owner of the said promissory note.

On the trial of the action it was proved that the defendant Chadsey received, upon the security of the said note, the sum of one thousand ($1,000) dollars, on the 3d day of March, 1859, and that James H. Leeds advanced that money by his check upon the Artisans' Bank. That on the 7th day of March, 1859, said Chadsey received the further sum of three hundred ($300) dollars, upon said security, which money he received through the hands of Anthony Boyer, but which money was also advanced by said Leeds.

It further appeared, that the note in suit was passed over into the hands of James H. Leeds, together with the stock note taken for the one thousand ($1,000) dollars, and the memorandum check for three hundred ($300) dollars loaned, and that said loans not being paid by Chadsey, Leeds, on or about the 26th of May, 1859, sold the said three thousand ($3,000) dollar note to the plaintiff in this action for a valid consideration, to wit, two thousand ($2,000) dollars cash, and the surrender of two notes of four hundred and fifty ($450) dollars each, held by plaintiff, on which Leeds was the indorser.

The principal issue tried and litigated on the trial was whether the note was usurious; whether Anthony Boyer lent the two items of one thousand ($1,000) dollars, and three hundred ($300) dollars, and whether he received usurious interest therefor, or whether James H. Leeds loaned the said items without receiving any bonus for the

loan.   There was no evidence in the case tending to show that Leeds received any usurious interest for said loans, or had any knowledge thereof.  Both Leeds and Boyer testify, positively, that the one thousand ($1,000) dollars was loaned by Leeds to Chadsey.  The jury found a verdict for the whole amount of the note and interest against the defendant Leeds, who made no defense to the action, and for the said one thousand ($1,000) dollars, and interest thereon against the defendants Chadsey and Craig. Several exceptions were taken by the defendants Chadsey and Craig, during the trial, and to the charge of the judge.

The defendants, Chadsey and Craig, moved for a new trial upon these exceptions at Special Term, which was denied, and judgment was thereupon entered.   The same defendants thereupon appealed to the General Term of the Supreme Court, where the judgment was affirmed, and now the defendants appeal to this court.

The testimony upon the point of usury was so conflicting that the finding of the jury must be deemed conclusive in relation to it.   The chief subject of contest between the parties is, therefore, disposed of, and the defendants must submit to the result, unless some error of law occurred upon the trial which will require another hearing to be had, and thus afford a new opportunity for asking the judgment of a jury upon the contested facts.

It is difficult to see upon what principle the jury found for the plaintiff upon the one thousand ($1,000) dollar note, and for the defendant upon the three hundred ($300) dollar check.   It was their province, however, to pass upon each point, and nothing is before us authorizing us to review the facts.

The first error claimed by the defendants is in the exclusion by the court of the record of a judgment in the Marine Court, in a suit brought by Mr. Leeds, upon this three hundred ($300) dollar check in question.  No object was stated by the counsel at the trial, in offering

this record in evidence, but it is now claimed that it would have shown that Leeds, himself, brought a suit on the three hundred ($300) dollar check in August, 1859, and that he was therefore in error in stating in his testimony that he had transferred the note during the month of May, of that year. It will be observed that Leeds was not on trial; the case as to him went by default, and the record could only be offered in evidence to impeach or contradict him as a witness. It was not original evidence as against the other defendants, and to make it competent to impeach Leeds it should have been shown to him and the inquiry made, if he had not so sworn, or, at least his attention should have been called to it, and an opportunity given to him to answer, with his attention thus awakened.

The defendant, however, at a subsequent stage of the case had the full benefit of this evidence, and thus obviated the objection, if any existed. It is stated at a later period of the trial, that the counsel for the defendant read the complaint sworn to August 10, 1859, which was the same complaint upon the three hundred ($300) dollar check in the record before referred to.

It is next objected that the court erred in rejecting the defendant's proposition to show that Boyer told the witness, Butler, that in a case of usury, he would swear false to avoid it. No sufficient foundation had been laid for this question; Boyer had simply been asked, did you ever tell John Butler you would swear false to avoid usury? omitting all specification of time or place. This was not enough to justify a contradiction. *Pendleton* v. *Empire Stone Dressing Co.*, 19 N. Y., 13.

I think the subject was also a collateral and immaterial matter in relation to which the answer of the witness was conclusive. Cow. & Hill's Notes, 522; *Newcomb* v. *Ginneld*, 24 N. Y., 299; *Carpenter* v. *Ward*, 30 id., 243.

As an impeachment, it was not competent, independent of the offer to contradict the witness. General character

alone is competent for this purpose, and particular acts or facts have always been excluded. It would not have been competent to have shown that he had in fact sworn falsely in a usury trial, much less that he had threatened to do so. 2 Seld., 104; *Corning* v. *Corning*, 7 Ward, 57; 4 Denio, 502; 5 Carr. & Payne, 468.

At another stage of the case, the witness Boyer was asked if he had not been indicted for procuring a series of notes purporting to be renewals, and presenting them, and getting the money on them as *bona fide* papers. This question was objected to as irrelevant, and it was further objected that this record must be produced. The objection was sustained, and the defendant seems to have been satisfied with the decision, as he took no exception. He cannot, therefore, ask its review in this court. I think also that the objection was a good one, and that the record was higher evidence than any oral statement. *Newcomb* v. *Ginneld, supra*. The judge also had a right to exclude it on his own motion without putting the witness to his privilege, and his decision is not the subject of an appeal. *Third G.W. Turnpike Co.* v. *Loomis*, 32 N. Y., 127.

The defendant also alleges error in the charge of the judge respecting the testimony of the witness Boyer. Several witnesses were called, who impeached Boyer by direct testimony, that his character was bad, and that they would not believe him when testifying under oath. The judge informed the jury that it was for them to say how far he was impeached, and whether so far as to render him unworthy of credit; that they were not to disregard his testimony, but not to regard it as they would that of an unimpeached witness, but to disregard it only so far as it comes in conflict with a creditable witness. "To the extent that he is corroborated by the circumstances of the case, or by the other testimony in the case, it does not exclude him as a witness. The credit to be given to him is submitted to you as a question to be passed upon by you in the jury room." After stating the impeach-

ment, the judge further proceeded: "It is for you to say whether, notwithstanding that he is still entitled to credit by reason of the probability of his story, by reason of the corroboration of the circumstances of the case, or by reason of the corroboration on the part of the other witnesses. This is all submitted to you with the other facts in the case."

The substance of the charge was, that an impeached witness might tell the truth; that he did not stand before the jury as one whose character had not been attacked, but that if, from his manner, the circumstances of the case, and the corroboration of other witnesses, the jury believed his statement, he was a competent witness, and it was competent to the jury to act upon his testimony. They were not bound to do so. They would be entirely justified in disregarding it, but they were not compelled to disregard it.

This was a correct exposition of the law. Especially should this view prevail at this time, when all the former distinctions respecting the competency of a witness are abolished, and everything is reduced to the theory of credibility, in the discretion of the jury. The law holds, with a few exceptions, that every intelligent person may be sworn, and that the jury may determine the extent of the reliance to be placed upon his testimony. If the fate of a friend or relative is involved, or an entire loss of fortune rests upon the result of a suit, the law now makes a person so affected competent to testify, and leaves it for the jury to weigh the testimony, in connection with the circumstances under which it is given. Even an accomplice in the commission of a foul offense for which a prisoner is on trial, may testify, and the jury are not prohibted from convicting on his unsupported testimony. Cow. and Hill's Notes, sup. notes, 57 to 71 ; *People* v. *Doyle*, 21 N. Y., 578; *Dunn* v. *People, infra.* It would be a singular anomaly that the testimony of one whose character was simply not equal to the standard of morality required by the community of which he was a member, should be incapable of

consideration by the jury; that however well satisfied the jury should be, from all the surroundings of the case, that his narration was in accordance with the truth, that they should be positively prohibited from giving it attention. Such is not the law. The case of *Dunlap* v. *Patterson*, 5 Cow., 243, holding a different doctrine, has been overruled in *Dunn* v. *The People*, 28 N. Y., 523.

These are the only important points in which the appellants claim that they have sustained injury. The case was eminently one of fact. The jury held the defendants to be in the wrong, and whether well founded or erroneous, their opinion upon a question of fact is conclusive.

Judgment should be affirmed.

Smith, J. Action in the Supreme Court, on a promissory note for $3,000, dated the 11th January, 1859, and payable six months after date, made by the defendant Chadsey, and indorsed by the defendant Craig as first indorser, and the defendant Leeds as second indorser.

The defendants answered separately.

The answer of the defendant Chadsey admitted the making of the note, and its indorsement by Craig, denied every other allegation in the complaint, and alleged that the note was delivered by Chadsey to one Boyer as collateral security for the payment of the sum of $1,000, which was loaned by Boyer to Chadsey, on the 3d March, 1859, for ten days, upon a corrupt and usurious agreement to pay for the use thereof the sum of twenty-one and $\frac{66}{100}$ dollars in addition to the lawful rate of interest; and that while the note was so in Boyer's hands, Chadsey agreed that Boyer might retain it as collateral security for the payment of the further sum of $300, which was loaned by Boyer to Chadsey, on the 7th March, 1859, for ten days, upon a corrupt and usurious agreement to pay for its use for that time the sum of seven dollars and fifty cents.

The answer of the defendant Craig alleged that he indorsed the note in suit for the accommodation of Chad-

sey, and put it into his hands to enable him to raise money thereon, and that Chadsey delivered it to Boyer upon the same usurious agreements stated in the answer of Chadsey; that if the note was transferred to the defendant Leeds or the plaintiff, it was done by Boyer, without authority, after the making of said usurious agreement, and that Leeds and the plaintiff had full knowledge of said agreement, and that the plaintiff was not a *bona fide* holder and owner of the note.

The defendant Leeds denied every allegation in the complaint.

The cause was tried at a Circuit Court before Justice W. F. Allen and a jury.

The plaintiff gave evidence tending to show that he bought the note of Leeds before its maturity, to wit: on or about the 20th of May, 1859, and paid for it a little over $3,000 by advancing $2,000 in cash, and canceling two notes indorsed by Leeds for $450 each, besides interest, and also a small account which Leeds was liable to pay. This evidence consisted in part of the testimony of Leeds.

On the part of the defendants, Chadsey and Craig, evidence was given tending to prove the usurious transactions set up in their answers. They proved also that when the $1,000 loan was made, Chadsey executed to Boyer an obligation called a stock note for $1,000, payable to Boyer's order, reciting the deposit of the $3,000 note with him as collateral security, with the privilege of selling the same on non-payment without notice; that when Chadsey borrowed the $300, he gave Boyer a memorandum check for that amount, payable to bearer; and that Boyer subsequently transferred the check to Leeds, and indorsed the stock note to him without recourse. In reply to the evidence tending to prove usury, Boyer was called as a witness by the plaintiff, and testified in substance that the loans of $1,000 and $300 were made to Chadsey by Leeds, and not by himself; that there was no agreement

to pay Leeds interest at any other or greater rate than seven per cent a year; that in negotiating such loans, Boyer, who was a broker in New York city, acted as the broker of Chadsey; and that the sums paid or agreed to be paid by Chadsey, by way of bonus, over and above seven per cent, were paid to Boyer as commissions for his services as such broker without the knowledge of Leeds. The testimony of Boyer was corroborated in some material respect by that of Leeds, and of Vandenhove, who was a clerk in Boyer's office. Five witnesses on the part of the defendants testified that Boyer's reputation for truth and veracity was bad, and their testimony on that point was not contradicted.

Boyer, on his cross-examination, testified that he knew John Butler of Brooklyn. He was then asked if he ever told Butler he would swear false to avoid usury, and he answered in the negative. Subsequently the defendants examined Butler, and put to him the following question: "Did you ever hear him (Boyer) say as to whether he would swear false in a case of usury or not?" The plaintiff objected. The defendants then proposed to show that Boyer told the witness that in case of usury he would swear false to avoid it. The offer was excluded and the defendants excepted.

After Leeds had testified that he transferred the note in suit to the plaintiff, Chadsey testified that he and the plaintiff were trying to arrange the claim on the note, and that, while negotiations were pending between them, and in August, 1859, Leeds sued Chadsey on the $300 check, in the Marine Court, in the city of New York; that Chadsey declined all further negotiations with the plaintiff, till Leeds' suit was discontinued, and that he had been informed it was discontinued. The defendants' counsel then offered in evidence the record of the suit in the Marine Court, but it was objected to and excluded, and the defendants excepted. Subsequently, the defendants produced and read in evidence the complaint in that

suit, which was sworn to by Leeds on the 10th August, 1859.

The judge in his charge to the jury submitted to them the question as to what credit was to be given to Boyer, and on that point expressed himself as follows: "Five witnesses were allowed to be called to the character of Boyer upon this occasion, and they uniformly testified that his character was bad, and they would not believe him under oath, where he was interested. You heard their cross-examination, and heard the names of those from whom they had gathered, so far as they could recollect, their information and knowledge of his character; for this reputation is not the knowledge of the witness, but his standing in the community—the character which we learn by the speech of people; and you are to take the fact of what has been said as to the character of Boyer into account, when you come to pass upon his testimony. It is for you to say whether, notwithstanding that, he is still entitled to credit, by reason of the probability of his story, by reason of the corroboration of the circumstances of the case, or by reason of the corroboration on the part of the other witnesses. This is all submitted to you with the other facts in the case."

At the close of the charge the defendants excepted in these words: "To so much of the charge as holds that Boyer might still be believed, although the jury credit the witnesses as to his character for truth and veracity."

The case states that immediately after the charge was concluded, a juror addressed to the court the following questions: "Supposing, your honor, the jury find that Boyer has played false with both parties in order to secure his commission, and has told Mr. Chadsey he was lending the money, at the same time he told Leeds he was lending it—how does that affect the note?" *The Court:* "I don't think Leeds would be estopped by the representations made by Boyer; I think if Leeds loaned the full amount upon the note to Chadsey, as upon the loan to

Opinion of the Court, per SMITH, J.

Chadsey, I do not think the note would be usurious."
*The Juror:* "Not even though Chadsey believed he was
dealing with Boyer?" *The Court:* "Yes, I think so."
The defendant excepted.

The plaintiff had a verdict against the defendant, Leeds,
for $3,928.64, the amount of the note in suit, and against
the defendants Chadsey and Craig for $1,334.63, the
amount of the $1,000 loan, and interest.

From the judgment entered on the verdict the defend-
ants, Chadsey and Craig, appealed to the Supreme Court,
at General Term, when the judgment was affirmed, and
they now appeal to this court.

Of the several questions in this case, I propose to
examine first those which are raised by the exceptions
to the rulings of the judge excluding testimony offered
by the defendants. *First.* The offer to prove by the
witness Butler that Boyer had told him that in a case
of usury he would swear false to avoid it, was correctly
excluded; no proper foundation had been laid for it. The
question previously put to Boyer was not sufficiently
specific to allow the defendants to contradict his answer.

It indicated nothing but the name of the person with
whom the supposed conversation was had. That was not
enough. The question should have been so framed as to
point out to the witness, with reasonable certainty, the
occasion of the conversation. Such is the rule laid down
by this court in the case of *Pendleton* v. *Empire Stone
Dressing Company,* 19 N. Y., 13. "It cannot, of course,
be necessary," said Judge DENIO, in the leading opinion
in that case, "that the precise date be indicated, as that
must often be difficult to ascertain, and if ascertained,
would not be likely of itself to recall the circumstances to
the witness; but the place could easily be indicated and
the occurrence identified by a statement of the purpose
of the interview or other circumstances which would recall
to the mind of the witness if the conversation inquired of
actually took place." The same learned judge also said:

" The reason for requiring that a witness whose credit it is intended to attack by the proof of contradictory statements, should be first examined respecting them, is according to the unanimous opinion of the judges in the *Queen's Case*, 2 Brod. & Bing., 313; that he may be enabled to give such reason, explanation or exculpation as the circumstances of the transaction may happen to furnish." Manifestly, the cross-examination of the witness Boyer, in the present case, did not come within the reason of the rule.

It is insisted, however, by the defendants' counsel, that although the proper foundation was not laid for proof that Boyer had made contradictory statements, yet the evidence offered tended directly to impeach him, by showing that he was unworthy of credit in the particular case in which he was then a witness, independently of any contradiction in his statements, and was admissible on that ground. As a general rule, in impeaching the credit of a witness, examination must be confined to his general reputation, and not be permitted as to particular facts. But this rule does not exclude proof of acts or declarations of the witness connected with the particular suit in which he is examined, or its subject matter. Such acts and declarations may be said to form an exception to the rule. Thus in *The Queen's Case*, already referred to, it was assumed without question to be competent to an accused party to show that a witness in support of the prosecution had made declarations, or done acts to procure other persons to give false testimony in support of the prosecution. 6 E. C. L. R., 129. If the offer in the present instance had been to show a declaration of Boyer that he would swear falsely to defeat the defense of usury in the particular case then on trial, it obviously would have been within the exception above suggested. But such declaration was necessarily included in the one which the defendants in fact offered to prove was made by Boyer, to wit: that in *any case* in which the defense of usury was set up, he

would swear falsely to avoid it. The testimony offered was therefore not incompetent, provided the proper foundation had been laid for its introduction, and this brings us to what I conceive is the real difficulty in the defendants' way.

The same foundation must be laid for the reception of evidence of particular declarations or acts of a witness of the nature above stated, as in the case of evidence of his contradictory statements, and for the same reasons.

The legitimate object of the proposed proof, in either case, is to discredit the witness. In each case it is equally due, not only to the convenience of the trial and the interests of justice, but also to the rights of the witness, that he should have an opportunity of tendering his version of the matter in the first instance. The *Queen's Case* expressly sustains these views. The judges were unanimously of opinion that it was not competent to prove declarations or acts of a witness to procure persons to give false testimony in the cause, without first examining the witness as to the fact whether he made such declarations or did such acts.

The reasons for the opinion are cogently stated by Ch. J. ABBOTT, and are, in substance, those above suggested. We have already seen that, in the present case, the requisite foundation was not laid for the proposed testimony, and for that reason the testimony was not admissible in any view.

*Second.* The exclusion of the record of the suit brought by Leeds in the Marine Court, on the $300 check, was not prejudicial to the defendants.

The only point in respect to which it could have been material, was the time when the suit was commenced. Assume that the record would have shown that the suit on the check was commenced by Leeds, subsequently to the time when the plaintiff in the present action claimed to have acquired from Leeds the title to the note in suit, which was collateral to the check; still its rejection was

not material, as that very fact was testified to by Chadsey and also by Leeds, without contradiction. The complaint which formed a part of the record, and which was perhaps competent evidence, as it was sworn to by Leeds, was received in evidence after the record was rejected, so that the defendants were not prejudiced in any respect by the exclusion of the record. Besides, the plaintiff failed to recover the amount of the check.

The exceptions to the charge remain to be considered.

*First.* One of the exceptions is in the following language: "To so much of the charge as holds that Boyer might still be believed, although the jury credit the witnesses as to his character for truth and veracity." It is a sufficient answer to this exception that it is inaccurate, as the unqualified proposition stated in it was not advanced by the judge.

It implies that he instructed the jury that although Boyer was impeached, they might credit his testimony without regard to whether it was corroborated or not.

The charge was in substance this : That the jury were to judge of Boyer's credibility ; that if they believed him so far impeached as to be unworthy of credit, they were not bound, on the one hand, to wholly disregard his testimony, nor, on the other, to regard it as they would that of an unimpeached witness; but that so far as he was corroborated by other testimony, or by the circumstances of the case, he was still a competent witness ; and the jury were to say whether, notwithstanding the impeachment, his testimony was entitled to credit by reason of such corroboration, or the probability of his story.

But if the exception be treated as applying to the portion of the charge of which the foregoing is a summary, the exception is nevertheless unavailing, for the reason that it is general, and the portion excepted to contains several propositions of law, some of which are entirely correct. Thus, it was unexceptionable to submit the witness' credit to the jury, and to tell them that although

they thought him unworthy of credit, they might believe him so far as he was corroborated by other testimony. Perhaps there is reason to doubt the accuracy of the instruction that the jury might say whether the witness, although impeached, was entitled to credit by reason of the probability of his story; but that precise point is not raised by the general exception, and a discussion of it would be useless.

But the defendants' counsel, assuming that his exception is available, insists that the portion of the charge claimed to be covered by it is unsound, and that the judge should have instructed the jury that Boyer was so thoroughly impeached as to justify them in rejecting his testimony altogether. In support of this position, the case of *Dunlop* v. *Patterson*, 5 Cow., 243, is cited; but that case has been seriously questioned, if not distinctly overruled by this court. *Dunn* v. *The People*, 29 N. Y., 523. And, even if it is to be regarded as authority, it is clearly distinguishable from the case at bar. There, the testimony of a single witness was directly contradicted by what he had sworn to on a previous trial, in relation to the same transaction; and it was entirely uncorroborated.

*Second.* The charge of the judge, that if Leeds made the loan to Chadsey, he would not be estopped by the representations made by Boyer, even though Chadsey believed he was dealing with Boyer, was not erroneous. There is nothing in the case to estop Leeds from questioning the truth of the representations made by Boyer to Chadsey, and upon the authority of the decisions of this court in *Condit* v. *Baldwin*, 21 N. Y., 219, and *Bell* v. *Day*, 32 id., 165, it must be held that although Chadsey believed he was dealing with Boyer, and paid him a *bonus* in excess of the legal rate of interest as a condition of the loan, yet if in fact Leeds loaned the money to Chadsey, the note was not usurious if Leeds did not take usurious interest himself, or know of its being taken.

*Third.* The points urged by the defendants, that the verdict was against the charge, and that it was inconsistent, assume that the jury found that the $300 check was usurious. There is no evidence that they so found. They may have reached their verdict by finding that neither of the loans was usurious; that the $300 check was not transferred to the plaintiff, and that he took the $1,000 note and the note in suit, with notice that the latter was merely collateral to the former.

The judgment should be affirmed.

All concur in affirmance.

Judgment affirmed.