THE GUARDIAN MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant, *v.* ELENOR KASHAW et al., Respondents.

B. & C. were agents for the M. P. Life Ins. Co., for soliciting insurance, and had a desk in its office. Defendant K. agreed to give B. & C. a bonus or commission of $3,000, to be paid by assigning certain small mortgages, for procuring a loan from said company of $7,000. The loan was obtained upon bond and mortgage, K. receiving from the company the full amount of the loan. The small mortgages were assigned to the father of B., who was second vice-president of the company. The papers were drawn by its attorney, executed in its office, and put into its safe, and subsequently were assigned to it. B.'s father, however, testified that he had no interest in the mortgages, but took the assignments in his own name at the request of his son, who was at the time of their execution absent, and that he was to pay to B. the proceeds; that upon the assignment to plaintiff he received credit for the full amount of the mortgages, and that prior thereto plaintiff had no interest in them. In an action to foreclose the mortgage given to secure the loan, *held* (CHURCH, Ch. J., dissenting), that the evidence failed to show that plaintiff was a party to the agreement for the bonus or received any benefit therefrom, and so did not sustain the defence of usury.

(Argued May 31, 1876; decided September 19, 1876.)

Appeal from order of the General Term of the Supreme Court in the second judicial department reversing a judgment in favor of plaintiff entered upon the report of a referee, and granting a new trial.

This action was brought to foreclose a mortgage executed by defendants, Elenor Kashaw and her husband, to the Mutual Protection Life Insurance Company, plaintiff's assignor, to secure a bond given for a loan of $7,000. The facts appear in the opinion.

*Samuel Hand* for the appellant. To constitute usury there must be a corrupt intent, and a receiving of more than legal interest by the lender. (*Condit* v. *Baldwin*, 21 N. Y., 219; *Mourse* v. *Prime*, 7 J. Ch., 77; *Middleton* v. *Fowler*, 1 Lock., 282; *Wilson* v. *Tamman*, 6 M. & G., 238; *Bell* v. *Day*, 32 N. Y., 165; *Fellows* v. *Comrs.*, etc., 36 Barb., 655; *Elmer* v. *Oakley*, 3 Lans., 34.) There is no different law on this subject applicable to the agent of a corporation from that applicable to the agent of a person. (A. & A. on Corps., § 29.)

*J. Lawrence Smith* for the respondents. The action of plaintiff's vice-president in relation to the bonus was binding upon the company, and the defence of usury was good. (*E. R. Bk.* v. *Gove*, 57 N. Y., 597.)

Rapallo, J. The referee found, as matter of fact, that the mortgagor agreed to give for the loan a bonus of $3,000 by the assignment of eight small mortgages, but that such bonus was agreed to be given to Newel W. Bloss and Frederick W. Caruthers; that the small mortgages were assigned to B. G. Bloss, who was second vice-president of the mortgagee, and father of Newel W. Bloss. But the referee refused to find that B. G. Bloss acted in relation to these small mortgages as and for the mortgagee, and he also refused to find that the assignment of the small mortgages was for the benefit of the mortgagee.

Upon these findings the defendant failed to make out the

allegation of usury. (*Condit* v. *Baldwin*, 21 N. Y., 219; *Bell* v. *Day*, 32 id., 165; *Lee* v. *Chadsey*, 2 Keyes, 543; *Estevez* v. *Purdy*, Ct. of Appeals, June, 1876; *ante*, 446.)

But the General Term reversed the decision of the referee, upon the facts as well as the law, and it is, therefore, necessary to refer to the evidence to ascertain whether it establishes that the assignment of the small mortgages was for the benefit of the mortgagee, or that the mortgagee was a party to the arrangement under which they were transferred.

The defense set up in the answer was that the mortgagee (The Mutual Protection Society) agreed to make the loan of $7,000 to Mrs. Kashaw, the mortgagor, provided she would pay the bonus of $3,000 by the assignment of the small mortgages. It was incumbent upon the defendant to prove that the mortgagee was a party to this agreement. If the bonus was contracted for and received by Caruthers and N. W. Bloss for their own benefit, the mortgagee receiving only lawful interest for the money advanced by it, the defence of usury must, under the authorities before cited, fail. The exorbitant amount of the bonus cannot affect the legal question.

The evidence showed that Caruthers and N. W. Bloss were solicitors for life insurance for the mortgagee, and had desks in its office. It does not appear that they, or B. G. Bloss, had authority to contract in behalf of the mortgagee to make loans. The son of Mrs. Kashaw applied, on her behalf, to Caruthers to negotiate the loan, and he applied to N. W. Bloss. Kashaw had personal interviews on the subject with Caruthers and N. W. Bloss, and at one of these offered to pay the $3,000 in small mortgages if they would get the loan through. The arrangement made with Kashaw, as testified to by Caruthers without contradiction, was that Mrs. Kashaw was to give a commission to N. W. Bloss, and that he was to share it with Caruthers, and that the transfer of the small mortgages was that commission.

Thus far there is nothing to connect the mortgagee with this commission, but the circumstances relied upon for that purpose are, in the first place, that when the transaction came

to be closed, the papers were all drawn by the counsel of the company, and the assignments of the small mortgages were made to B. G. Bloss, and executed in the office of the company. B. G. Bloss explains this circumstance by testifying that he took these assignments in his own name at the request of his son, who was at the time of their execution absent in Georgia; that he had no interest in them and was to give the whole proceeds of them to his son; that they all belonged to him, except the part to which Caruthers was entitled.

It is also claimed, that the president of the company mortgagee was cognizant of and sanctioned the transaction, but this fact is not established. At the time of the execution of the assignments, the president was absent and said to be sick. The next day Mrs. Kashaw's attorney went to the office of the mortgagee, and went into the president's room and received from him a check for the full amount of the loan. He (the attorney) testifies that the small mortgages were taken by Mr. Bloss and put in the safe, but he does not say that this was done in the president's room or in his presence, and there is no evidence in the case that the president had any knowledge of the transaction. It is unnecessary, therefore, to consider what effect such knowledge would have had, if it had been shown.

The next fact relied upon is, that some of the small mortgages were subsequently assigned by B. G. Bloss to the company mortgagee, but he testifies that he received credit from the company for the full amount of the principal and interest of the mortgages so transferred. That the company had no interest in them, but they belonged to his son and Caruthers. This is all the evidence tending to connect the mortgagee with the exaction of the bonus.

There is no conflict in the testimony of the witnesses, and bearing in mind that the burden was upon the defence to establish that the company was a party to the agreement for the bonus or accepted the benefit of it, we think the evidence fails to establish that fact, and that the court at General Term was not justified in reversing the judgment entered upon the

report of the referee. Usury, like every other defence, must be established by proof, and cannot be sustained on mere surmise and conjecture, especially when the direct evidence, so far as it goes, tends to refute it.

The order of the General Term should be reversed and the judgment entered upon the report of the referee affirmed, with costs.

All concur, except CHURCH, Ch. J., dissenting.

Order reversed and judgment accordingly.