MARTHA E. VAN WYCK et al., Respondents, *v.* PHILIP WATTERS et al., Appellants.

The fact that an agent, intrusted with money of his principal to invest, exacts a bonus for himself, without the knowledge or assent of his principal, as a condition of making a loan, does not establish usury. The principal is not liable for such an unauthorized act of the agent, in the absence of proof that he received a portion of the bonus or in some form reaped a benefit or advantage from the same.

An order of General Term, reversing a judgment, entered upon a decision of the court, stated that the reversal was "upon the law and the facts." *Held,* that it sufficiently appeared that the reversal was "upon a question of fact," within the meaning of the provision of the Code of Civil Procedure (§ 1338), authorizing a review of such a question by this court.

(Argued April 28, 1880; decided June 8, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, reversing a judgment, in favor of defendants, entered upon the decision of the court on trial at Special Term. (Reported below, 16 Hun, 209.)

This action was brought to foreclose a mortgage executed by defendants, Watters and wife, to the plaintiffs, as trustees under the will of Henry L. Van Wyck, deceased. The defense was usury.

The facts appear sufficiently in the opinion.

*A. R. Dyett* for appellants. The presumption of law is, that whatever one of the trustees did was with the concurrence and consent of the others. It was the duty of all the trustees to participate in the loan. They could not, like executors, act separately. (*Thatcher* v. *Candee,* 4 Abb. Ct. App. Dec. 387, 390; *Moir* v. *Brown,* 14 Barb. 45.) As Blunt was acting in the business of the trust, a presumption arises that he did so with the concurrence of his associates; and the fact that he was acting illegally did not rebut that presumption. (*Chambers* v. *Clearwater,* 1 Abb. Ct. App. Dec. 341, 343; *Life and Fire Ins. Co.* v. *Mechs. Fire Ins. Co.,* 7 Wend. 31, 34, 35; *Neil* v.

*Cleaveland,* 30 N. J. Eq. 273.) As the order of reversal does not state that the judgment was reversed on a question of fact, this court could not reverse it on that ground. (Code of Civil Procedure, § 1338.) The transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it. (*Quackenboss* v. *Sayer,* 62 N. Y. 364; *East River Bank* v. *Hoyt,* 32 id. 122.)

*E. Ellery Anderson* for respondents. The doctrine that the reception of a usurious bonus by one of the several trustees, without the knowledge or consent of his co-trustees, would not invalidate a mortgage taken by them. (*Stout* v. *Rider,* 12 Hun, 574; *Ridgeley* v. *Johnson,* 11 Barb. 527; *Thatcher* v. *Candee,* 33 How. 146.) In the entire absence of proof that the other trustees authorized Blunt to charge and receive an unlawful bonus, no such authority can be presumed. (*Booth* v. *Swezey,* 8 N. Y. 276; *Mutual Ins. Co.* v. *Kashaw,* 66 id. 544; *Condit* v. *Baldwin,* 21 id. 219; *Elwood* v. *Diefendorf,* 5 Barb. 398.) No act of Odell, in extorting compensation to which he was not entitled from Watters, could render the mortgage usurious. (*Condit* v. *Baldwin,* 21 N. Y. 219; *Estevey* v. *Purdy,* 66 id. 446; *Mutual Insurance Co.* v. *Kashaw,* 66 id. 544.)

MILLER, J. The finding of the judge upon the trial, that the bond and mortgage, which is the subject of controversy in this action, was usurious, is not, we think, sustained by the evidence. It is established beyond any question that no portion of the money paid upon the bond and mortgage was ever received by the estate which the plaintiffs represented, or that such estate derived any benefit or advantage whatever from the alleged usury.

It is insisted by the defendants' counsel that the alleged usury was received with the knowledge of Blunt, one of the plaintiffs and the trustee who transacted the business relating to the loan. We think that the evidence fails to establish that he received any portion of the amount retained by the attorney, or

that he had any knowledge of the usurious agreement, or derived any benefit whatever from the same. The arrangement for the loan was made with the broker, and the bonus to be paid, and whatever was retained passed immediately into the hands of Odell, the attorney, who kept the same after the payment of the broker's commissions, and who testifies that he applied the money to his own use and never paid any part thereof to Blunt. The proof shows that Blunt gave, to the mortgagor, one check for the amount due upon a prior mortgage upon the property, and also signed two other blank checks. The defendant swears that these checks were filled up by Blunt, and that one of them was for the amount of the alleged usury; that Blunt asked him to indorse the last-named check, saying that he would settle with the broker, and he did indorse the same as requested. He is, however, contradicted upon this point by Blunt, by Johnson, the broker, and Odell, the attorney, all of whom testify that Blunt signed two checks in blank, both of which were afterward filled up by Odell, with whom Blunt left them. The judge also found, in reference to this branch of the case, that the two blank checks were filled up by Odell, with whom Blunt had left them signed by him in blank, with authority to fill them up for such sum as might be necessary. The evidence, upon its face, is very clear that the two checks last named were filled up and delivered in the absence of Blunt, and that he was not present at all, and had no participation in the transaction upon the final consummation of the loan and when the business was brought to a close.

Blunt testifies distinctly and positively that he did not, directly or indirectly, receive any of the money, and Johnson and Odell both swear very distinctly that Blunt had no knowledge whatever of the alleged usury, and no share in the proceeds thereof. There is no proof that any part of this money was received by Blunt, or that he, in any form, reaped any benefit or advantage from the same. The conclusion, therefore, that usury was established, aside from the testimony of the defendant that Blunt filled up the checks — which should be disregarded, as the judge found to the contrary — must rest

entirely upon inferences to be drawn from the circum-
stances surrounding the transaction.   The fact that Blunt and
Odell were lawyers, occupying the same office and having
friendly relations, and the proof that Blunt was called out
before the amount of the two checks was determined upon,
and the business completed, as well as some other circum-
stances, are calculated to arouse suspicion that Blunt must
have known and participated in the division of the money
received for the bonus.   But, after all, this conclusion rests
upon mere surmise and conjecture, which is not, we think,
sufficient to sustain the defense of usury, especially when the
positive testimony is strongly in a contrary direction.   Usury
must be established, like any other defense, by proof of a satis-
factory character, and a party cannot be made liable for the act
of an agent intrusted with money to invest, who exacted a
bonus for himself as a condition of making the loan, without
the knowledge or assent of his principal.   (*Guardian Mut.
Life Ins. Co.* v. *Kashaw,* 66 N. Y. 544; *Condit* v. *Baldwin,*
21 id. 219.)   With positive proof that Odell retained all the
bonus except the amount paid to Johnson for his commissions
as broker, we cannot resist the conclusion that the weight of the
evidence is adverse to the theory that Blunt knew of or re-
ceived any part of the bonus, or that the contract entered into
by him was usurious, and that the decision of the Special Term
was wrong, and the General Term was right in reversing the
same.

The General Term had power to reverse upon the facts, and
as the order shows that the judgment was reversed on the law
and the facts, this court has authority to review the facts.

There is no force in the point urged that, according to sec-
tion 1338 of the Code of Civil Procedure, the order should show
that the judgment was reversed "upon a question of fact," as
it sufficiently appears from the language of the order that the
reversal was upon a question of fact.   As the judgment was
erroneous upon the ground stated, it is not necessary to consider
some other questions raised by the appellants' counsel upon the
argument.   The order appealed from should be affirmed, and

judgment absolute ordered for the plaintiffs upon the stipulation, with costs.

All concur.

Order affirmed and judgment accordingly.