DANIEL L. WILDER, APPELLANT, *v.* GEORGE B. PEABODY, RESPONDENT.

*A witness cannot testify as to the impression produced on his mind by a conversation—impeaching the general character of a witness for veracity—what questions cannot be put to the witnesses called, to do so.*

Upon the trial a witness, called by the plaintiff to testify as to a conversation he had had with the defendant, said that he could not say what the defendant had stated in it. Subsequently he was asked what impression that conversation made upon his mind. *Held*, that the question was properly excluded.

Upon the trial of this action the defense called one George Morse for the purpose of impeaching the plaintiff's character, he having been sworn as a witness. Morse having testified that the plaintiff's general character for truth and veracity was bad, was asked, and allowed, against the plaintiff's objection and exception, to answer in the affirmative the following ques-

tion: "Did Mr. Wilder (the plaintiff) state to you in a certain conversation that he regarded it as no wrong to swear falsely against such a man as Albert Morse?"

*Held,* that it was error to allow the question to be put and answered, as it called for a specific declaration upon a collateral matter to which the attention of the plaintiff had not been called on his cross-examination.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee appointed in the County Court of Oneida county.

The action was originally brought in a justice's court, to recover for services alleged to have been performed by the plaintiff as an attorney for the defendant, in a suit brought by the latter, against the New York, Oswego & Midland Railroad Company. The services and retainer were denied by the defendant, and it was averred by him that whatever services the plaintiff had performed in that suit were performed for and at the instance of William Sanders, the attorney for the defendant in this action, who was the plaintiff in that suit, and were to be paid for by Sanders and not by the plaintiff there, who is the defendant here. Upon the trial before the justice the plaintiff recovered a judgment from which the defendant appealed to the County Court of Oneida county, where a reference of the issues was ordered.

*James B. Jenkins,* for the appellant.

*Shoecraft, Bennett & Tuttle,* for the respondent.

HARDIN, J.:

The evidence of the plaintiff as a witness tended to support his averment of a cause of action against the defendant, and if he had been believed as a witness the referee would have reported in his favor. The testimony of the defendant tended to establish a special agreement with Sanders to bring the railroad suit, and perform the services needful in its prosecution; and that the defendant did not employ the plaintiff, but that Sanders did, acting upon the special arrangement he had made with the defendant here (plaintiff there). There was such a conflict in the evidence, that we cannot say that the report is against the weight of the

evidence, and therefore upon the merits we ought not to disturb his conclusions of fact.

Upon the trial the plaintiff called as a witness J. W. Conant to prove a conversation he had with the defendant. He stated that he could not say what the defendant stated. Subsequent to that the witness was asked what impression that conversation made upon his mind. This was objected to and properly excluded. (*Bump* v. *Sumner*, decided Fourth Department, June, 1879.)

In the cross-examination the witness testified that the railroad case was tried before him, as a justice of the peace. He was then asked this question : "Did Mr. Beach, on the trial of the cause before you, testify to a conversation which he had with Mr. Peabody?" This was objected to by the plaintiff upon several grounds, and the objections were overruled, and the plaintiff excepted. The witness answered in the affirmative. Then he was asked ; "What did witness Beach swear to in reference to *the time* of the conversation with Mr. Peabody, in reference to the employment of Wilder in the suit?" This was duly objected to and overruled, and the plaintiff excepted. The witness answered : "He swore he could not tell whether it was before or after the commencement of the suit; was inclined to think it was after."

Beach had been called as a witness for the plaintiff, and gave evidence of a conversation held with the defendant in respect to the latter's admissions and statements that he had employed the plaintiff. He stated that the conversation was before the railroad trial. Upon the cross-examination he was asked if he swore to the conversation on the trial before the justice, and he said he did not. It was therefore allowable to contradict Beach by the justice Conant. (*Sprague* v. *Cadwell*, 12 Barb., 517.) And it was a matter of discretion whether such contradiction should be allowed in cross-examination of Conant, before the plaintiff rested, or be called later, after the plaintiff had rested. There was no error, therefore, in receiving the evidence of Conant.

The defendant called George Morse, for the purpose of impeaching the plaintiff, as a witness. He gave general evidence to the effect that the plaintiff's general character for truth and veracity was bad. He was then asked by the defendant this question, viz. :

Did Mr. Wilder state to you, in a certain conversation, that he regarded it as no wrong to swear falsely against such a man as Albert Morse? This was objected to, and the objection overruled and an exception taken. Witness answered: "He did;" and the witness added that he could not tell "how long ago it was." Was it error to receive the answer to the question? The general rule for the impeachment of a witness is that the inquiry must be confined to his general character. (*Douglass* v. *Tousey*, 2 Wend., 352; *Commonwealth* v. *Moore*, 3 Pick., 194; *Curtis* v. *Fay*, 37 Barb., 69; 2 Phil. on Ev., 955, Cow. and H.'s Notes.) It has been settled in this State by the Court of Appeals, in *People* v. *Gay* (3 Seld., 380), that in general a party will not be permitted to give evidence of his witness's good character until it has been attacked on the other side, either by the evidence of witnesses called for such purpose or by the evidence of the witness on cross-examination going to impeach his general character.

As we have stated, Wilder was not cross-examined as to the matter involved in the question put to George Morse. Suppose he had been, and admitted the declaration, could witnesses be called to sustain his general character? *Rex* v. *Rudge* (2 Peake N. P. Cases, 232) is an authority for a negative answer. It was said, in *Jackson* v. *Lewis* (13 Johns., 505) that "inquiry as to any particular immoral conduct is not admissible against a witness." It was held in *Rex* v. *Hemp* (5 Carr. & P., 468) that a witness cannot be asked whether he has heard the witness sought to be impeached commit perjury in the trial of a cause. In *Harrington* v. *Lincoln* (3 Gray, 133), the court refused to receive evidence that a witness said if he had been on the stand he would have said something even if it had been untrue, after the witness had denied so stating.

His conviction of a "crime" may be proved for the purpose of affecting the weight of his testimony, either by the record or by his cross-examination. (Code Civ. Pro., § 832.) A witness cannot be examined as to a distinct collateral fact for the purpose of impeaching him by a contradiction. (*Harris* v. *Wilson*, 7 Wend., 57.) This rule has an exception to it, which allows a contradiction of a witness who denies an attempt to suborn a witness to swear falsely in the cause. In that event a witness may be called to con-

tradict his statement. (*Morgan* v. *Frees*, 15 Barb., 352 ; 7 How. St. Tr., 1400.) And in such case the attention of the witness sought to be impeached by such contradiction must first be called to the matter in his cross-examination. In this case the question allowed to the witness, George Morse, was as to a collateral matter, and the attention of Wilder had not been called to it. It was said by SMITH, J., in *Lee* v. *Chadsey* (2 Keyes, 553), that the witness should have an opportunity in the first instance of stating his version of the matter—and that, for the absence of such opportunity, the exclusion of such evidence was proper. The question therefore was improper under the general rule and the exceptions thereto.

It was erroneously allowed, as it called for a specific declaration upon a collateral matter. (Opinion of HUNT, J., in *Lee* v. *Chadsey*, 2 Keyes, 546, and cases there cited.) If it had tended to establish a disbelief in a supreme being it might have been competent to affect his credibility. (2 R. S., 408, § 88 ; *Stanbro* v. *Hopkins*, 28 Barb., 270 ; *People* v. *McGarren*, 17 Wend., 460.) When he became a witness he put his general character in issue, but not his specific declarations or specific acts. He was presumed to be ready to defend the former, but he could not be expected to be prepared to sustain and meet the latter. (*Spencely* v. *De Willott*, 7 East, 109 ; *Harris* v. *Tippett*, 2 Camp., 637.) We cannot say that the evidence thus improperly put in th case did not injuriously affect the plaintiff. He had given vital evidence upon the issue involved. He was contradicted and a clo question of fact was presented. Witnesses were called to impeach him, and also to sustain him, so far as his general character for truth and veracity, and as to whether he was worthy of belief under oath. The referee was called upon to say whether he would credit his testimony or that of the defendant. Therefore whatever tended to disparage Wilder contributed to render doubtful his evidence, and to produce just the result that was reached, a disbelief of his testimony. This improper evidence may have turned the scale against the plaintiff. We are not at liberty, therefore, to disregard the error, even under the liberal rule prescribed in section 1003 of the Code of Civil Procedure, or adopted by the courts in cases when it is clear that the party was not injured by an erro-

neous admission of evidence. Possibly the result would have been the same, if this improper evidence had not been received, but the best solution of the question can be had upon a new trial, which we should order.

Judgment therefore reversed, and a new trial ordered in the County Court of Oneida county, with costs to abide the event.

TALCOTT, P. J., and SMITH, J., concurred.

Ordered accordingly.