WOOD et al. v. BABBITT et al.

(Circuit Court, D. New Jersey. January 12, 1907.)

1. USURY—BURDEN OF PROOF.
   The burden of proof of usury always rests on the party pleading it.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Usury, § 308.]

2. SAME—EVIDENCE—WEIGHT.
   It is insufficient to establish usury that the circumstances proved render it highly probable that a corrupt bargain was made, but such bargain must be proved beyond a reasonable doubt by the decided preponderance of the evidence.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Usury, §§ 328-339.]

3. BILLS AND NOTES—BONA FIDE PURCHASER—USURY.
   Where W. became the holder of a note alleged to have been given as a bonus for a loan pursuant to a usurious contract, for full value before maturity and without notice of any illegality or infirmity connected therewith, the defense of usury was not available as against him or his executors.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, §§ 982-984.]

4. USURY—PLEADING.
   Where a plea of usury failed to set forth the facts and circumstances of the alleged usurious contract with any degree of precision, and contained no direct averment of a corrupt intent, and did not precisely state the terms and nature of the usurious agreement or transaction with all the facts and circumstances relating thereto, it was fatally defective.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Usury, §§ 272, 279-281, 285, 286, 294, 295.]

In Equity.

Collins & Corbin (Burr, Brown & Lloyd, of counsel), for complainant.

Henry H. Fryling, for defendant Anna D. Babbitt.

Samuel W. Beldon, for defendant Fidelity Trust Co.

CROSS, District Judge. The complainants, who are the executors of the last will and testament of William Brewster Wood, deceased, are seeking in this action to obtain a decree against the defendants for the payment of the amount due upon two several promissory notes made by the defendant, Anna D. Babbitt dated March 24, 1902, by one of which notes she promised to pay to the order of the said William Brewster Wood, in the city of Philadelphia, on March 24, 1905, the sum of $10,000, together with interest at 6 per cent. per annum, payable semiannually, and by the other of which she promised to pay to the order of the New York Finance Company, at its office in the borough of Manhattan, in the city of New York, the sum of $5,000, at and after the death of one Charles G. Campbell. At the foot of each of said notes, the maker thereof pledged as collateral security for the payment thereof, all her right, title, and interest in and to the estate of said Charles G. Campbell, coming to her at his death, as by certain assignments bearing even date therewith, would more fully appear. These assignments will be referred to more fully later. Prior to the making of these notes, and in the month of July, 1898, Charles G.

Campbell, above mentioned, conveyed all his property, real and personal, to the defendant, the Fidelity Trust Company, in trust, among other things, first, to pay the charges against the same; and then to pay the income therefrom arising during his lifetime, as therein directed, and, at his death, after making two specified payments of $10,000 each, "to divide the balance of said trust estate then remaining, among the heirs at law of Charles G. Campbell, according to the intestate laws of the state of New Jersey; the personal property of said estate then in the hands of the trustee to be divided as aforesaid, according to the statute of distributions, and the real property then remaining in possession of the trustee, to be divided as aforesaid, according to the statute of descent." The evidence shows that at the death of said Charles G. Campbell, which occurred on May 29, 1905, he left him surviving three children—one of whom is the defendant Anna D. Babbitt, who, at his death, became entitled to one-third of his estate remaining in the hands of said trustee, after deducting therefrom the specific payments above mentioned. It was this interest in the trust estate that Mrs. Babbitt pledged as collateral security for the payment of the notes above mentioned, not only by pledge appearing upon the face of the notes, but also by separate deeds of assignment of even date with the notes, in which her husband united, and which deeds of assignment were duly acknowledged by the assignors. The note made to the order of New York Finance Company, was, on the day of its date, duly indorsed and delivered to the complainants' testator, and the interest in the trust estate which she had assigned to the finance company, as collateral security for the payment of that note, was by a separate instrument, assigned and delivered by the finance company to William Brewster Wood, under circumstances which will be hereinafter referred to. The complainants are seeking to recover the amount due upon said two notes, for principal and interest; and, by their bill of complaint ask that the Fidelity Trust Company may account for the estate remaining in its hands, and that the amount found due upon such notes, may be decreed to be paid by it to the extent that it, as such trustee, may have funds in its hands belonging to the said Anna D. Babbitt, applicable to the payment of said notes. Each of the defendants has answered; the defendant Anna D. Babbitt by her answer claiming that the notes were given in connection with, or as a part of a usurious transaction or transactions, and that the $5,000 note represents the amount of usury which she was compelled to pay in order to procure the loan of $10,000, represented by her note for that amount; and the Fidelity Trust Company by its answer, among other things, denying that any accounting is necessary to determine the amount of the trust estate in its hands belonging to Anna D. Babbitt, because it admits that her interest therein is largely in excess of the amount claimed by the complainants to be due to them from the said Anna D. Babbitt.

The notes referred to were given under the following circumstances: Early in the month of March, 1902, Mrs. Babbitt's attention was directed to an advertisement in the New York Sunday Herald, which represented in substance that one Helffrich could

procure loans as desired, upon estates in expectancy. She thereupon called upon Helffrich, who introduced her to a representative of the New York Finance Company; which company had an office in the same building with Helffrich. There is some conflict in the evidence as to who the representative of the finance company was, to whom Mrs. Babbitt was in the first instance introduced, but at all events, after an interview between Mrs. Babbitt, such representative, and Helffrich, the latter drew up an agreement dated March 11, 1902, which recited that Mrs. Babbitt had applied to the New York Finance Company to negotiate a loan for her of $10,000, on a certain legacy or devise, as it was called, coming to her under an irrevocable deed of trust made by Charles G. Campbell, of Morristown, N. J., to Fidelity Trust Company, as trustee, which said legacy or devise, it was further recited, was to come into her actual possession at the death of said Campbell, and that said loan was to be negotiated upon certain terms and conditions therein stated, the pertinent parts whereof are as follows:

"And I do further undertake and agree with the said New York Finance Company that, in consideration of its negotiating the aforesaid loan for me, and of guarantying me against any demands for the payment of the principal thereof, and against any foreclosure of the same until after the death of the aforementioned Charles G. Campbell, and also of its paying the interest on the said loan for me as the same may from time to time accrue at the rate of 6 per cent. per annum, and also of the payment of the premiums upon a satisfactory policy of insurance upon my life as they may from time to time mature and become payable, that there shall be paid to the New York Finance Company for such services and advances as aforesaid, the sum of five thousand dollars ($5.000) together with the actual moneys advanced for interest and premiums as hereinbefore recited; it being understood and agreed, however, that the said sum of five thousand dollars, together with the afore-mentioned advances on account of interest and premiums, and together with the principal loan of ten thousand dollars, shall be paid out of the legacy and devise hereinbefore referred to."

And, in addition to the foregoing, by the last paragraph of the agreement, it was provided that Mrs. Babbitt should execute and deliver such instruments as might be necessary to secure the payment of the loan of $10,000, and the moneys to the New York Finance Company as therein above recited.

The foregoing agreement was signed and sealed by Mrs. Babbitt, and witnessed by her husband and Mr. Helffrich. In brief, it shows that the company was to negotiate a loan of $10,000 for Mrs. Babbitt, and was to be paid for its services in guarantying the continuance of the loan, and advancing interest and life insurance premiums, the sum of $5,000. The matter of procuring the loan of $10,000 for Mrs. Babbitt, was intrusted by the New York Finance Company to one Charles H. Burr, a member of the bar of the state of Pennsylvania, who, in turn, spoke of it to one James McF. Gummey, then engaged in real estate business in Philadelphia. Both of these men were directors in the finance company, and Gummey had general charge of the investments of Mr. Wood. The loan was subsequently recommended to Mr. Wood by Gummey, and he, Mr. Wood, and Mr. Burr, later went to Newark and looked at some of the real estate included in the trust, and after such examination, Mr. Wood agreed to take the loan,

and on the same day further agreed to take from the New York Finance Company, a note of Mrs. Babbitt for $5,000, which should be secured on the same trust estate, subject only to the lien thereon in favor of the $10,000 loan, which he had already agreed to take. The $5,000 loan to the company, however, was to be secured to Mr. Wood, not only by the indorsement to him, by the New York Finance Company, of Mrs. Babbitt's note for that amount, and by an assignment of her interest in the trust estate given the finance company as security for its payment, but also by the finance company's own note to Mr. Wood, for $5,000, payable in five years. After arranging the matter upon the above basis, Mr. Wood left the matter in the hands of Messrs. Burr & Gummey for completion, and the transaction was subsequently carried out on the basis above outlined. Mr. Wood, in his private books, always treated the transaction as a single loan of $15,000. So far as the evidence discloses, he knew nothing of the consideration of, or circumstances under which, the $5,000 note was given by Mrs. Babbitt. He relied on Gummey, however, to see that the papers were put in proper form, and paid over his money to Mr. Burr, who was the Philadelphia agent of the New York Finance Company. He first offered his check for the loan to Gummey, who told him, as a matter of convenience, to hand it to Mr. Burr, which he did; that this sum of $15,000 went to the New York Finance Company from Mr. Wood for the purpose above stated is incontrovertible. The evidence clearly shows it, and as clearly shows also that Mr. Wood did not, at any time, receive any bonus or usurious interest, or have knowledge that any was taken, or was to be taken by anybody, if such was the fact. It further affirmatively appears that no promise or agreement was made to Wood that he should at any time receive anything above legal interest upon the moneys he had loaned. So far as the evidence discloses, he, in good faith, made a loan of $15,000 upon the securities indicated, and received 6 per cent. interest thereon to the time of his death. Mr. Wood subsequently made other loans of a somewhat similar character through the New York Finance Company, but they have no bearing upon this transaction, since it appears that this was the first he had ever had with the company, and also the first, or nearly the first, that the company itself had had. It may appropriately be said at this point that the answer of Mrs. Babbitt grounds her claim for relief substantially, upon the allegation that Mr. Wood and the New York Finance Company were "one and the same person or concern, or if not one and the same person and concern, the said William Brewster Wood was a stockholder or partner in said New York Finance Company, or had some interest therein, or such close business relations with it as that whatever profit or money was made or attempted to be made legally and illegally by the said New York Finance Company, was shared in by, and paid to the said William Brewster Wood." Not only were these allegations not proved, but they were absolutely disproved. The evidence establishes that Wood never at any time had any interest in, connection with, or control over, that corporation or its affairs, and that he never, in any way shared in its profits or business. Briefly stated, then, Mr. Wood

loaned $15,000—$10,000 of which was secured by a note of Mrs. Babbitt to his order, accompanied by an assignment to him of her interest in the trust above referred to, and the balance of which was loaned by him to the New York Finance Company upon the note of Mrs. Babbitt, for $5,000 to the order of, and indorsed to him by, the New York Finance Company, secured by an assignment from the company of her interest in said trust held by it as collateral to the note, and also by the note of the New York Finance Company for $5,000, payable to Mr. Wood in five years from its date. Mrs. Babbitt received on the $10,000 note when the transaction was completed, $9,200 in cash, $500 additional by check to her order, which she indorsed to her broker, Helffrich, while $300 was reserved by the New York Finance Company, by her consent, until she should present to such company a satisfaction piece or discharge of a judgment entered against her in one of the courts of New Jersey, for substantially that amount. The evidence shows that, although she paid this judgment about a year ago, she never informed the company of that fact, much less produced to the company a satisfaction piece or discharge thereof, hence it was fully justified in retaining that sum under the agreement, for her account. Mrs. Babbitt has therefore received full value for the $10,000 note, which she made to Wood's order. As to the note for $5,000, it appears that the New York Finance Company has advanced, pursuant to the agreement above set forth, all the interest which accrued on the $10,000 note, prior to the death of Charles G. Campbell, and also the insurance premiums on the policy taken out on her life, aggregating in all between $3,000 and $4,000.

The burden of proof always rests upon the party setting up usury. The facts necessary to constitute it must be clearly established beyond reasonable doubt by the decided preponderance of evidence. It is not enough that the circumstances proved, render it highly probable that there was a corrupt bargain; such a bargain must be proved, and not left to conjecture. Berdan v. Trustees, etc., 47 N. J. Eq. 3, 10, 21 Atl. 40, s. c. affirmed on the opinion below, 48 N. J. Eq. 309, 24 Atl. 130; Taylor v. Morris, 22 N. J. Eq. 606, 612; Guardian Mutual Life Ins. Co. v. Kashaw, 66 N. Y. 544, 547, 548. In the view I take of this case, however, it is unnecessary to determine whether the $5,000 note was usurious in its inception or not, since I find that Mr. Wood became the owner and holder of it for full value before maturity, and without notice of any illegality or infirmity connected therewith. These facts under the "negotiable instrument law" of the state of New York, passed in 1897, render the note free from defenses available to prior parties among themselves. But aside from this, and assuming that the $5,000 note was taken as a bonus in pursuance of a usurious contract or agreement between Mrs. Babbitt and the finance company, such defense cannot be imputed to Mr. Wood, or his executors, without affirmative proof that he had some knowledge of, or interest in, the illegal transaction, which, as already stated, he did not have. Lane v. Washington Life Ins. Co., 46 N. J. Eq. 316, 19 Atl. 617, 618; Guardian Mutual Life Ins. Co. v. Kashaw et al., 66 N. Y. 544; Van Wyck et al. v. Watters, 81 N. Y. 352; Philips et al. v. Mackellar, 92 N. Y. 34.

I have considered the issue presented in this case upon its merits, and the conclusion I have reached renders it unnecessary to consider whether usury was well and sufficiently pleaded within the established rules on that subject. Nevertheless, as the insufficiency of the answer in that respect has been raised and strongly urged, it is not improper, and perhaps, upon the whole, it is better that it should be passed upon, particularly as, in my opinion, the answer is deficient in the respect mentioned. It is well nigh impossible to determine therefrom, whether the pleader intended to allege that the two notes constituted one or two transactions, or whether one or both of them were usurious, and, if so, whether they were usurious under the law of the state of New York, or of the state of Pennsylvania, or of both. At one time the allegation is made that the transaction was usurious under the law of Pennsylvania, again under the law of New York, and still again under the law of both states. Considered as a whole, the answer is loosely drawn, has no direct averment of corrupt intent, and the facts and circumstances of the alleged usurious contract are not set forth with any degree of precision. The answer is of an omnibus form, and apparently was designed to meet any and every situation which the evidence might discover. In 22 Enc. of Pl. & Prac., at the bottom of page 430, the rule of correct pleading in such cases is laid down as follows:

"The rule in regard to the pleading of usury has always been exceedingly strict. * * * It is necessary both at law and in equity, that the plea and answer should specifically set forth with the utmost certainty and distinctness, the terms and nature of the usurious agreement or transaction and all the facts and circumstances relating thereto. A general averment of usury is never sufficient."

The doctrine thus laid down is sustained by numerous authorities cited in the footnotes. See, particularly, Kase v. Bennett, 54 N. J. Eq. 97, 33 Atl. 248; Taylor v. Morris, 22 N. J. Eq. 606, 611, the former case holding (page 101 of 54 N. J. Eq., page 250 of 33 Atl.) that the rule of pleading this defense is even stricter in equity than at law.

A decree will be entered in favor of the complainants for the amount due upon the two notes, with interest besides costs.